[Civ. No. 30248. First Dist., Div. Four. Jan. 22, 1973.]

OAKLAND POLICE OFFICERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF OAKLAND et al., Defendants and Respondents.

**COUNSEL**

Davis, Cowell & Bowe, Philip Paul Bowe and Alan C. Davis for Plaintiffs and Appellants.

Edward A. Goggin, City Attorney, and Mark B. Shragge, Deputy City Attorney, for Defendants and Respondents.

OPINION

DEVINE, P. J.—Plaintiffs, Oakland Police Officers Association and certain police officers, sought writ of mandate and declaratory judgment which would decide that police officers of the City of Oakland be furnished without charge, handcuffs, flashlights, batons, gun holsters, gun belts, handcuff cases, service revolvers, bullet cases, and other related equipment. It is plaintiffs' position that these items are safety equipment and therefore, under the provisions of Labor Code, section 6401, must be furnished by the employer, the city. They appeal from a judgment after trial by court, which in effect was in favor of the city, its auditor and its city manager. We say, "in effect," because although the judgment recognizes the obligation of the city to furnish the equipment, it does so only to the extent that funds are provided by section 50081 of the Government Code. This section, which became effective November 23, 1970, reads as follows: "To the extent that funds therefor have been made available to a local agency pursuant to section 50082, the legislative body of a local agency shall furnish each police officer and deputy sheriff employed full time by the local agency with equipment necessary for the safety of such an employee, which shall include, but is not limited to, the following: a suitable firearm, holster, belt and ammunition, a nightstick, handcuffs, and foul-weather garments. Such equipment shall remain the property of the local agency and shall be returned upon request of the local agency." (Stats. 1970, ch. 1531, § 2, p. 3093.) The companion statute, section 50082 of the Government Code, is this: "The Legislature shall make available to the California Council on Criminal Justice for allocation to local agencies, funds to be used with available federal funds or any other available funds to provide the equipment required to be furnished by Section 50081. The California Council on Criminal Justice shall adopt rules necessary to implement this section including rules governing the manner of application for allocation of funds." (Stats. 1970, ch. 1531, § 3, p. 3094.)

Section 50081 does not make moot the present case, which was commenced on October 17, 1969, before the statute's effective date, because, although it does make certain provision for the purchase of equipment by the city, this particular statute does not require equipment to be furnished except as funds are made available. Further, it would not apply to police officers who had purchased their equipment within three years prior to

the filing of this action (the time for filing actions based on statutory liability (Code Civ. Proc., § 338)). Besides, we are informed by counsel that funds have not been forthcoming, so that none of the designated equipment actually has been furnished to the police force. The enactment of section 50081 did, however, cause the trial judge to nullify his memorandum and notice of intended decision filed on July 13, 1970, in which he had concluded that the city is required to furnish the items as safety equipment under the provisions of the Labor Code. Instead, the judge issued a new memorandum and supplemental notice of intended decision on December 28, 1970, in which he expressed the opinion that section 50081 places a limit upon the obligation to furnish the equipment, the limit being the funds made available for the purpose through the California Council on Criminal Justice, and he rendered judgment accordingly.

It is convenient to discuss the subject in two phases: first, whether there was a duty to provide the equipment under the provisions of the Labor Code prior to enactment of Government Code section 50081; and second, if it be decided that the duty rested upon the city to furnish the equipment under the Labor Code, whether section 50081 places a limit upon that duty.

PHASE I—LABOR CODE

Section 6401 of the Labor Code reads: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes, which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees." The term "safety device" must be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger. (Lab. Code, § 6311.) The Labor Code provisions apply to public agencies. (*Lehmann* v. *L. A. City Board of Education*, 154 Cal.App.2d 256, 260-261 [316 P.2d 55].) In fact, the Chief of the Division of Industrial Safety of the State of California testified that the division had interpreted or would interpret the provisions of the Labor Code as applying to personal protective equipment, such as a fireman's helmet or protective garments to shield him from excessive heat; or in the case of a policeman, a riot helmet or plastic shield attached to a riot helmet or safety goggles. But although the division had made no specific ruling on the matter of the equipment which is the subject of this lawsuit, the Chief of the Division of Industrial Safety had written to counsel representing plaintiffs, stating the position of the division that the statute was

not intended to cover this type of equipment but only that which is protective against specific hazards to the eyes, head, feet, and body. He had suggested that relief should be obtained through legislative enactment. At the trial, there was testimony by a successor Chief of the Division of Industrial Safety to the effect that a police officer's service revolver is a weapon, a destructive device; and by the assistant chief, to the effect that it is a tool of the trade, and that although it may be used to protect the officer, it does not, in his opinion, fall within the provisions of Labor Code section 6401.

We do not agree, nor did the trial judge, with the position of the division and of respondents. There was but little dispute about the other items than the service revolver, which is the most expensive of them; and we shall confine our discussion to this single item. It is difficult to conceive of equipment which is more protective in nature than the officer's revolver. To be sure, its best use is during its presence in his holster. But while it is so contained, it enables the officer to make arrests, to interrogate suspects, and to carry on his multifarious duties with the knowledge that if there develop serious resistance or threat of danger, he can protect himself even against more than one potential assailant. Occasionally, he may actually use the weapon when he is not in personal danger, as in shooting at a fleeing felon, although even in such cases often he must beware lest the felon be armed and turn upon him, or that confederates of the fugitive be ready for attack. But the use of the weapon against fugitives is but a small part of the usefulness of the revolver. The gun provides effective means of law enforcement because it continually gives a measure of safety to the officer.

The concept of the officer's weapon as a "tool of the trade" is unreal. To be sure, it is carried on the officer's person, so it is not like safeguards on machinery, a stationary device. But it is also unlike the plumber's wrench or the carpenter's saw, for these are used, not in emergency situations wherein the plumber's or carpenter's life is in jeopardy, but in the ordinary and expected performance of the artisan's work. The fact that the gun protects the officer's life does not make it less important as a safety device than the goggles which guard a workman's eyes.

To interpret the Labor Code section as respondents would have it would produce inequalities which, if they would not amount to violation of equal protection of the laws, at least would be rather marked. One example is that just stated, the goggles; another, the fireman's helmet.

It is unthinkable that a local governmental agency would require or

permit its officers to go onto the streets without guns. If we imagine a case in which an officer were directed to go about his duties unarmed, and he were killed by a felon, can there be any doubt that it would be held that the Labor Code had been violated? Of course, the prospective officer buys a gun, if his employer does not. But the obligation of the employer is not thus removed. Those local governments which provide the gun comply with the Labor Code; the others do not.

We find unacceptable respondents' argument that the contemporaneous construction of the statute by those charged with its enforcement will be accepted unless it is clearly erroneous, and that in this case there is at least no clear error. In the first place, there has been no formal administrative decision by the Division of Industrial Safety, but only expressions of particular officials; in the second place, even if the division had formally ruled, we would disagree with their ruling, for the reasons given above; and in the third place, as will appear below, the Legislature has expressly recognized that this equipment is necessary for the safety of the employees. We also reject respondents' argument that because certain bills which would have provided for payment of the equipment in question were defeated by the Legislature in 1963 (AB 1390), in 1965 (AB 1319), and 1967 (AB 902), it must be concluded that at no time did the Legislature consider the equipment as coming within the provisions of Labor Code section 6401. Usually it is not possible by purely deductive reasoning to account for the failure of bills to gain approval as they run the gamut of legislative committees. As the trial judge aptly put it: "For all that appears, they may have considered the bills unnecessary, or they may not even have been thinking of the Labor Code provisions. Quite possibly, they were reacting to the crossfire of political pressures involved in the financial aspects of the bills."

In the 1970 text of section 50081 of the Government Code, upon which respondents place much reliance, as set forth under Phase II below, all of the equipment which is the subject of this lawsuit, with a minor exception (flashlights) was described as "necessary for the safety of such an employee," that is, a police officer or deputy sheriff. Obviously, the equipment had not changed its character suddenly. It always was safety equipment, and the Legislature simply gave it a proper designation.

PHASE II—EFFECT OF ENACTMENT OF THE GOVERNMENT CODE SECTIONS

A. *As Enacted in 1970*

■ Respondents contend, and they were successful in persuading the trial judge to change his intended decision because of their contention,

that section 50081 of the Government Code is a later and more specific statute than Labor Code section 6401, and therefore takes precedence over the earlier statute (*County of Placer v. Aetna Cas. etc. Co.,* 50 Cal.2d 182 [323 P.2d 753]), even if section 6401 formerly covered the designated equipment, and that the opening words of section 50081 would be nugatory if it were not held that the section creates but a limited obligation on the part of the local agency. The opening words are, "To the extent that funds therefor have been made available." Appellants, on the other hand, contend that Government Code sections 50081 and 50082 should be construed harmoniously with Labor Code section 6401, each statute being a part of the whole system of law. (See *California Comp. Ins. Co. v. Ind. Acc. Com.,* 128 Cal.App.2d 797, 811-812 [276 P.2d 148, 277 P.2d 442].) It is not unusual to find that two or more rules for interpretation of statutes are opposed to each other, and this is so here.

We find more acceptable the interpretation which favors the position of appellants. The far-reaching and permanent policy of the state in respect of making adequate provision for the safety of employees is a consideration of great weight. We find it hard to believe that since the equipment in question is necessary for the safety of police officers, as we have concluded it is and as it was expressly recognized to be in section 50081, the Legislature intended to *reduce* the responsibility of employers by the enactment of that section. Particularly do we find it difficult so to believe, in view of the increasing responsibilities of the officers and the recognition of the need for giving support to law enforcement agencies, as shown by the creation of the California Council on Criminal Justice itself. Moreover, we do not find that the commencing words of section 50081 (the "to the extent" passage) are made meaningless by our holding. These words may be interpreted as meaning that cities must supply the equipment to the extent and no more than that for which the state with federal aid supplies funds, as respondents would have it. But they may also be interpreted as mandating cities to use whatever they get from the state under section 50082 to its full extent for the designated purpose. With the latter interpretation, Labor Code section 6401 would still apply over and above the provisions of Government Code sections 50081 and 50082. This interpretation gives effect to *both* statutes, a favored result. (*Southern Pac. Co. v. Railroad Com.,* 13 Cal.2d 89, 100 [87 P.2d 1055]; *Stafford v. L. A. etc. Retirement Board,* 42 Cal.2d 795, 799 [270 P.2d 12]; *Eden Memorial Park Assn. v. Superior Court,* 189 Cal. App.2d 421, 426 [11 Cal.Rptr. 189].) Also, it accords with the general policy of the law, for if the contrary, that is, respondents' contention, be upheld, there may be the following results: 1) If the state, acting in response to its own directive under section 50082, supplies enough funds for all local agencies to buy all of the described equipment, the provisions of the Labor

Code as well as of the Government Code would be met. 2) But suppose the state, using its own funds, supplies but one half, or another fraction of the necessary amount, what then? Surely every officer, not just part of the force, must be supplied. Would an officer then have to pay one half, or the missing fraction, of the cost of what is expressly designated as equipment necessary for his safety? Was the statute meant to compel a prospective police officer to assume a share of the burden of the local agency, although other employees may rely on the Labor Code to compel their employers to pay the whole? 3) Finally, suppose the state does not, for a time at least, supply anything at all, despite the provisions of section 50082? Then, presumably, the prospective officer must himself pay the whole amount of what the Legislature has expressly designated as safety equipment.

### B. *As Amended in 1972*

During the pendency of this appeal the Legislature amended Government Code sections 50081 and 50082. Some of the changes are not directly relevant to this appeal, such as the elimination of reference to federal funds, the transfer of the duty of implementation of section 50082 from the California Council on Criminal Justice to the Commission of Peace Officer Standards and Training, and minor changes in the description of the items of equipment. Two changes in section 50081, however, prompted this court to require additional briefing. These changes are: 1) the elimination of the words "equipment necessary for the safety of such an employee," and 2) the requirement that the equipment be furnished to each *newly hired* police officer and deputy sheriff employed full time. Our inquiry to counsel was whether these changes indicated a withdrawal by the Legislature of words which might signify that the Legislature regarded the described equipment as being necessary for the safety of the employees. We conclude that the changes do not so indicate. Our reasons for regarding the equipment as essentially constituting safety devices within the meaning of the Labor Code is not altered by the deletion of the reference to safety equipment by the 1972 amendment. If it was safety equipment in 1970, it was nonetheless safety equipment in 1972. Just what the purpose was in making the deletion, we do not know. Possibly it was this: As the statute read between 1970 and 1972, it required the Legislature to make available funds for *all* equipment necessary for the safety of the employee, including but not limited to the particularly described items. But what other equipment might be necessary was uncertain. By removing the comprehensive description, the Legislature made it the responsibility of the *state* to provide simply the described items, but left untouched the responsibility of each employing agency to comply with the all-embracing demand for reasonable safeguards set forth in the Labor

Code. Similar reasoning applies to the addition of the words, "newly hired." The Legislature made it the responsibility of the state to provide specified equipment for new employees. But it left intact the permanent duty of all employers to comply with the Labor Code as to all employees. Here again, the words, "to the extent," contained in section 50081, simply mean that the local agency must use whatever funds are provided by the state in section 50082 for the purchase of the equipment. Had the Legislature intended to remove the described equipment from the category of necessary equipment for the safety of the employees (assuming that no violation of equal protection would result), it would seem that the Legislature would have done so explicitly.

The judgment is reversed, with directions to the court to issue a writ of mandate in accordance with the views expressed in this opinion.

Rattigan, J., and Bray, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 22, 1973. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.