[Civ. No. 18359. Third Dist. Apr. 30, 1981.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION et al.,
Plaintiffs and Respondents, v.
J. J. ENOMOTO, as Director, etc., et al., Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendants and Appellants.

Loren E. McMaster, Ronald Yank, Russell L. Richeda, McMaster & Stump, Carroll, Burdick & McDonough and Neyhart, Anderson, Nussbaum, Reilly & Freitas for Plaintiffs and Respondents.

OPINION

PARAS, Acting P. J.—In the underlying superior court action, plaintiffs California State Employees' Association (CSEA) and Charles

Swim filed a petition for a writ of mandamus and complaint for declaratory relief. They sought an order requiring defendants Department of Corrections (Department) and its then director, J. J. Enomoto to furnish service revolvers as safety equipment to parole agents employed by the Department. The basis for the petition was that the furnishing of firearms was compelled by the California Occupational Health and Safety Act (OSHA), which requires employers to provide reasonably adequate safety devices for safe and healthful employment. (Lab. Code, §§ 6401, 6403.) At all times relevant, rules of the Department have prohibited parole agents from carrying firearms unless prior permission has been obtained through established procedures by a demonstrated specific threat to personal safety. (Dept. of Corrections Parole Procedures Manual, art. 3, §§ 130-133.)

Defendants demurred on the ground that plaintiffs did not petition the OSHA Board to set a firearm safety standard (Lab. Code, §§ 142.1-142.5) and thus failed to exhaust their administrative remedies prior to seeking judicial relief. The court overruled the demurrer.

At trial, the court issued a writ of mandate commanding defendants "to furnish parole agents with firearms" and permit them to carry firearms on their persons at their individual discretion. It further granted attorney fees to plaintiffs. The court specifically found that Labor Code section 6401 compelled its decision. Although no parole agent of the Department has "ever been killed in any duty-connected circumstance," it found the dangers of the employment such ". . . that death or violent injury might reasonably be expected to occur at anytime, and the failure of any fatality to occur is notwithstanding, rather than because of, the inability of parole agents to carry firearms."

Defendants appeal the superior court judgment and contend the court (1) was required to dismiss the action for failure to exhaust administrative remedies, (2) impermissibly and without substantial evidence substituted its own discretion regarding parole agent safety for the administrative policy decisions within the discretion of the Department, and (3) erroneously awarded attorney fees.

For purposes of our review, we assume that plaintiffs exhausted all available administrative remedies. We also assume (without so holding or suggesting) that a parole agent's service revolver is a "safety device"

within the meaning of Labor Code section 6401[1] (see *Oakland Police Officers Association* v. *City of Oakland* (1973) 30 Cal.App.3d 96 [106 Cal.Rptr. 134]). ▇ We reverse the judgment solely because its crucial finding that the furnishing of firearms to parole agents is "reasonably necessary" for their protection and safety in carrying out their duties is not supported by substantial evidence. Without a positive showing of reasonable necessity pursuant to section 6401, the court impermissibly interfered with the Department's managerial decision on the subject.

The parties stipulated that the "parolee population in general has within it a far more dangerous type of felon today than it did some years ago." Charged with the dual functions of protection of the public and rehabilitation of the offender, the agent regularly visits parolees in neighborhoods having a high incidence of crime and has authority as a peace officer (Pen. Code, § 830.5) to arrest parolees and others violating the law. Departmental policy recognizes the potential danger involved in an arrest and, in the foreseen situation, requires the agent to effect an arrest by thoughtful planning and assistance of law enforcement officers. (Parole Procedures Manual, ch. 8, § 813.) In the unanticipated situation, departmental policy specifies that the agent "is not expected to attempt an arrest which cannot be successfully and safely executed." (*Ibid.*)

The record is replete with instances in which parole agents either have been underaggressive or have retreated from dangerous situations until they could obtain backup support from armed peace officers. The trial court apparently was influenced by such evidence when it found the departmental policy had caused felons to go "unapprehended for various periods of time subsequent to encounters with unarmed parole agents." Although it is of much public concern, the effectiveness vel non of agents in the apprehension of lawbreaking parolees nevertheless is not germane to the present controversy. The pivotal question here, founded on Labor Code section 6401, is whether the specific device of a firearm gives parole agents reasonable protection against the dangers

---

[1]Labor Code section 6401 reads: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees."

Labor Code section 6403 further provides in part: "No employer shall fail or neglect: [¶] "(a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe."

inherent in their employment. Viewing the record in the light most favorable to plaintiffs, we find the evidence insufficient to support the conclusion that the portage of firearms renders the performance of agents' duties more safe. (See *Setzer* v. *Robinson* (1962) 57 Cal.2d 213, 217 [18 Cal.Rptr. 524, 368 P.2d 124].)

The present record is devoid of any parole agent altercations involving guns. Not only does California have the fortunate history of never having had any agent killed in the line of duty, but plaintiffs have presented no instance in which an agent has ever been injured by gunfire. There is but a single instance in which an unknown man leveled a gun at an agent in the mistaken belief that he was the parolee under supervision; there was no injury. Other evidence presented falls short of proof that the arming of parole agents with a firearm's deadly force would render their jobs safer. Specific altercations cited by plaintiffs include one rape in 1974, several assaults, and one instance in which an agent was robbed and severely beaten. Not one of these incidents however was directly related to any agent's employment function, nor is there evidence in the record to establish, beyond speculation, that injury would have been avoided had the agent been armed.

Although all parole agent injuries are not reflected in the departmental altercation reports, the statistically low incidence of altercations is highly significant. In 1977, but 22 altercation reports were submitted relative to approximately 210,000 face-to-face contacts with parolees.

The trial court's decision seemingly was based in part on a finding that the Department's policy authorizing issuance of service revolvers only to specific agents whose safety is directly threatened has been ineffective because of time delays and the Department's requirement of a "verifiable" threat. But the issue is not whether the Department's individual arming policy is effective or efficiently implemented. The present controversy involves only the reasonable necessity of *general* deployment of firearms; plaintiffs have made no generalized showing.

We do not wish callously to hinge our decision on the auspicious record of no agent fatalities to date. To insist upon actual fatalities or injuries in large numbers before protective action is taken is folly. Yet we do not think a court should speculatively predict the likelihood of fatalities if the Department continues its current policy. Without contrary indications in the record, we defer to the experience and executive expertise of the Department on this issue. The question of deployment of

deadly force is a "delicate judgment . . . best exercised by the . . . legislative and executive officers" of the state and ordinarily "can not and should not be accomplished by judicial fiat." (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364, 371, 373 [132 Cal.Rptr. 348].) Department's management strongly adheres to the belief that the portage of firearms by parole agents would result in increased danger. Enomoto testified, ". . . when we arm agents as a general policy . . . despite training or quality of training or anything else, I am convinced that somebody is going to provoke situations where somebody is going to get hurt, somebody is going to get killed." Deputy Director Arlene Becker was of the same opinion. Unsupported by hard facts to the contrary, judicial interference with agency discretion is unwarranted.

The judgment, including the attorney fee award, is reversed; the case is remanded to the trial court with directions to deny the petition.

Reynoso, J., and DeCristoforo, J.,* concurred.

A petition for a rehearing was denied May 28, 1981, and respondents' petition for a hearing by the Supreme Court was denied July 1, 1981.

---

*Assigned by the Chairperson of the Judicial Council.