[Civ. No. 20977. Third Dist. Aug. 25, 1982.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION et al.,
Plaintiffs and Appellants, v.
HOWARD WAY, as Secretary, etc., et al., Defendants and
Respondents.

COUNSEL

Loren E. McMaster and McMaster, Stump & Lobel for Plaintiffs and Appellants.

George Deukmejian, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendants and Respondents.

OPINION

**EVANS, Acting P. J.**—Regulation 4038 of the California Youth Authority (hereafter Department) provides: "An employee shall not carry or use firearms or other lethal weapons under any circumstances while on duty or acting in an official capacity." (Cal. Admin. Code, tit. 15, § 4038.) In the summer of 1980, the Department reaffirmed the regulation following a series of public hearings.

Robert M. Gomez, a parole agent with the Department, and the California State Employees' Association, the bargaining representative for Department parole agents, brought a mandamus petition and complaint for declaratory relief challenging the validity of the regulation. The trial court granted summary judgment for the Department and this appeal ensued; we affirm.

*Procedural History*

The gist of plaintiffs' action was that the job of a parole agent is so dangerous that the Department has a duty (Lab. Code, § 6400 et seq.)

to furnish or pay for service revolvers as "safety devices." The contention is founded on Labor Code section 6401, which provides: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees." Plaintiffs allege regulation 4038 is invalid as it conflicts with the Labor Code.

In the motion for summary judgment the Department argued regulation 4038 was valid in light of recent amendments to Penal Code section 830.5 (eff. Sept. 30, 1980) which provide: "The following persons are peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment .... *Such peace officer may carry firearms only if authorized and under such terms and conditions as are specified by their employing agency*: [¶] (a) A parole officer of the ... Department of the Youth Authority, ..." (Italics added.)[1] The Department contends that by this amendment, the Legislature manifested an intent to defer the question of arming to the Department. In any event, it was argued that a parole agent's job was not so hazardous that it required a gun be provided as a safety device pursuant to the Labor Code. Finally, the Department maintained the administrative record contained overwhelming evidence to refute any challenge to the regulation as arbitrary, capricious or lacking in evidentiary support.

In opposition to the motion for summary judgment, plaintiffs urged there was a triable issue of fact, i.e., whether a parole agent's job was so hazardous as to require arming; they also seemed to allege for the first time that the hearing process itself had been unfair because of Department bias.

I

Three of plaintiffs' contentions may be disposed of summarily. First, they assert the trial court erroneously viewed as dispositive our recent decision in *California State Employees' Assn.* v. *Enomoto* (1981) 118 Cal.App.3d 599 [173 Cal.Rptr. 517]. There this court found a trial

---

[1]Before the amendment, the section contained no reference to arming. (See Stats. 1980, ch. 616, § 1, for the most recent wording before the relevant amendment.)

court's conclusion that Labor Code section 6401 required the Department of Corrections to furnish its parole agents with firearms to be unsupported by substantial evidence. (118 Cal.App.3d at p. 602.) Plaintiffs claim the trial court in the present case mistakenly read *Enomoto* as barring their suit by principles of res judicata, or at least that it failed to understand that *Enomoto* was an evidentiary decision which provided plaintiffs the opportunity to introduce facts proving the need to arm agents of the Youth Authority. The record reflects the contrary. The trial court invoked the *Enomoto* decision merely for the proposition that the arming question is a delicate one, best left to the discretion of the two other branches of government; the court was persuaded by the amendment to Penal Code section 830.5, which it noted had *not* been treated in *Enomoto*. Res judicata was casually mentioned as an afterthought to the court's ruling; at that time plaintiffs pointed out that res judicata had no application and the court agreed.

Second, plaintiffs assert that because the Department's motion for summary judgment was unsupported by affidavits it was somehow insufficient to controvert the allegations in plaintiffs' petition. But affidavits were obviously unnecessary since the motion was supported by incorporation of portions of the record of the administrative proceeding.

Third, plaintiffs contend the court labored under the false assumption that theirs was a petition for administrative, not ordinary, mandate. The court did indicate some question as to the proper label for the action; however, it clearly treated the petition as one for ordinary mandate.

## II

Plaintiffs' principal contention is that summary judgment was improper since there were triable issues of fact as to the validity of regulation 4038. In considering the arguments, we acknowledge that plaintiffs' opposition must be liberally construed (*Eagle Oil & Ref. Co. v. Prentice* (1942) 19 Cal.2d 553, 556 [126 P.2d 880]), and recognize that our review of the Department's decision must be narrowly channeled. As the Supreme Court recently observed: "The courts exercise limited review of legislative acts by administrative bodies out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of

authority. ██ Although administrative actions enjoy a presumption of regularity, this presumption does not immunize agency action from effective judicial review. A reviewing court will ask three questions: first, did the agency act within the scope of its delegated authority; second, did the agency employ fair procedures; and third, was the agency action reasonable." (*California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 211-212 [157 Cal.Rptr. 840, 599 P.2d 31]; fns. omitted.)

██ The asserted triable issues reduce to these three: (1) whether the job of a parole agent is so dangerous that regulation 4038 violates the Labor Code; (2) whether the regulation is arbitrary or capricious; and (3) whether the hearings were unfair because of Department bias.

### The Labor Code

Correctly observing that an administrative regulation is void if it violates an act of the Legislature (*California Welfare Rights Organization* v. *Carleson* (1971) 4 Cal.3d 445, 455 [93 Cal.Rptr. 758, 482 P.2d 670]), plaintiffs insist they must be given the opportunity to prove that a firearm is a necessary "safety device" for parole agents within the meaning of Labor Code section 6401, which would render regulation 4038 void. They particularly rely on *Oakland Police Officers Association* v. *City of Oakland* (1973) 30 Cal.App.3d 96 [106 Cal.Rptr. 134], where section 6401 was found to require that police officers be armed. Their reliance is misplaced. The relevant amendment to Penal Code section 830.5 was enacted well after and, we assume, in light of both Labor Code section 6401 and the decision in *Oakland Police Officers Association, supra.*[2] (*Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 383 [150 Cal.Rptr. 841].) It may be concluded that in adopting the amendment to section 830.5 that allows Department parole agents to be armed "only if authorized and under such terms and conditions as are specified by their employing agency," the Legislature has implicitly determined that a firearm is *not* a necessary safety device for parole agents. However, the Legislature has granted the Department the option to arm its agents, and the Department's ultimate decision is subject to our review. Any dispute with the Legislature's determination that the Labor Code (§ 6400 et seq.) is not implicated should be resolved in that forum, not here.

---

[2]In fact, the Labor Code and *Oakland Police Officers Association* were both discussed in a memorandum from the office of the Legislative Counsel prepared shortly before adoption of section 830.5.

■ Plaintiffs assert the Penal Code provision represents an .undue delegation of power if read in this way. "An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make *fundamental policy decisions.*" (*People* v. *Wright* (1982) 30 Cal.3d 705, 712 [180 Cal.Rptr. 196, 639 P.2d 267]; italics added.) Here the fundamental question, whether policy requires the arming of Department agents, has *not* been delegated, but rather answered in the negative by the Legislature itself; the Department has been granted the option to arm if it so desires.

## Reasonableness

Plaintiffs next contend there is a triable issue of fact as to the reasonableness of the regulation. ■ No matter what our view may be as to the wisdom of the regulation, "A reviewing court does not superimpose its own policy judgment upon a quasi-legislative agency in the absence of an arbitrary decision; . . ." (*Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 594 [71 Cal.Rptr. 739].) "A court will uphold the agency action unless the action is arbitrary, capricious, or lacking in evidentiary support. A court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute." (*California Hotel & Motel Assn.* v. *Industrial Welfare Com., supra,* 25 Cal.3d at p. 212; fn. omitted.) Moreover, "The question of deployment of deadly force is a 'delicate judgment . . . best exercised by the . . . legislative and executive officers' of the state and ordinarily 'can not and should not be accomplished by judicial fiat.'" (*California State Employees' Assn.* v. *Enomoto, supra,* 118 Cal.App.3d at pp. 603-604.)

■ At the hearing on the motion for summary judgment, plaintiffs offered to prove (1) that one parole agent had been shot and wounded by a parolee, another shot at by a parolee and missed, a third shot at by an unknown assailant, and a fourth killed by a parolee; (2) statistics show Youth Authority parolees to be particularly violent, and active in organized gangs; (3) a report commissioned by the Department concluded that parole agents should be armed; (4) in a deposition taken several months after conclusion of the hearings, the Director of the Department of Corrections testified that youthful violent offenders are more dangerous than older violent offenders; (5) also in depositions taken months after the hearings, key officials responsible for the decision to retain regulation 4038—Howard Way, Secretary of the Youth and

Adult Corrections Agency, and Pearl West, Director of ·the Department—"demonstrated an amazing lack of knowledge of the day to day duties" of a parole agent; (6) until a year before trial, no data had been kept on assaults or shootings involving parole agents; and (7) the hearings yielded "an overwhelming response in favor of providing service revolvers to Youth Authority Parole Agents."

Assuming these allegations to be true, they do not detract from the substantial evidence in the record supporting the Department's decision. The Department conducted six days of hearings, at five different locations throughout the state. It received oral testimony from 69 witnesses and written testimony from 52 more; 46 participants endorsed regulation 4038, while 75 advocated arming (11 of these only in special circumstances). Participants included Department supervisors and agents, law enforcement officials, lawyers, and concerned citizens. Reasons for not arming were varied, and included: the special role of parole agents in the community; the false sense of security a gun might provide; the danger of self-inflicted wounds; and the fact that guns were not necessary for the job. The administrative record contains a survey indicating that 69 percent of states responding forbid their parole officers from carrying firearms. A lengthy draft report concluded that data failed to indicate whether a firearm would increase or decrease safety. Further, an exhaustive survey of rank-and-file parole agents showed that they were equivocal about arming: while 68 percent felt safety measures were inadequate, only 52 percent thought a gun was an important safety device, and only 39 percent would carry one if permitted.

In sum, the record makes it abundantly clear that there was no triable issue as to the reasonableness of the Department's decision to retain regulation 4038.

*Bias*

Finally, we consider plaintiffs' charge of bias.[3] Plaintiffs claimed they were ready to prove: (1) certain Department memoranda would reveal that the hearings were viewed as a means to justify a decision already reached; (2) depositions taken after the hearings show that Department officials' minds were closed on the issue; (3) the Department concentrated on collecting data unfavorable to arming, refusing, for example,

---

[3]We do so while acknowledging the Department's argument that plaintiffs failed to raise this issue until their opposition to the motion for summary judgment.

to do research regarding killings or assaults on parole agents in other jurisdictions, and burying a report it had commissioned which recommended arming; (4) Department officials read unsubstantiated "facts" into the record at the hearings; (5) during the pendency of the hearings the Department reiterated its no-gun policy, fired an agent for carrying a gun on duty, and disciplined another for testifying in favor of that employee.

█ While a fundamental ingredient of fair proceedings is an unbiased decision maker (*Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 657 [163 Cal.Rptr. 831]), "[i]n an administrative context, . . . 'Bias in the sense of crystallized point of view about issues of law or policy is almost universally deemed no ground for disqualification.'" (*Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 790 [171 Cal.Rptr. 590, 623 P.2d 151], quoting 2 Davis, Administrative Law Treatise (1st ed. 1958) p. 131.) Further, plaintiffs must present concrete evidence of bias; it cannot be implied. (*Id.*, at p. 792.)

█ Much of what plaintiffs put forth as bias, even if taken as true, amounts to nothing more than a "crystallized point of view" on the part of Department officials that arming is bad policy. To the extent plaintiffs assert the Department's bias led it to suppress contrary views, the assertion is belied by the administrative record. The fact is, the case for arming was repeatedly and ably made through oral and written testimony. Plainly bias was not a triable issue.

The judgment is affirmed.

Carr, J., and Abbe, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.