TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1106 |
| of | : | |
| | : | July 7, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____


JAMES W. NIELSEN, CHAIRMAN OF THE BOARD OF PRISON TERMS, has requested an opinion on the following question:

Are investigators of the Board of Prison Terms required to have a license to carry a concealed firearm while off duty?

CONCLUSION

Investigators of the Board of Prison Terms are not required to have a license to carry a concealed firearm while off duty.

ANALYSIS

Penal Code section 12025, subdivision (a)[1] provides:

"A person is guilty of carrying a concealed firearm when he or she does any of the following:

_____
[1] All references hereafter to the Penal Code are by section number only.

"(1)  Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

"(2)  Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person."

Section 12027 exempts certain persons from the terms of section 12025.  It states:

"Section 12025 does not apply to, or affect, any of the following:

"(a)(1)(A)  Any peace officer, listed in Section 830.1 or 830.2 whether active or honorably retired, *other duly appointed peace officers*, honorably retired peace officers listed in subdivision (c) of Section 830.5, other honorably retired peace officers who during the course and scope of their employment as peace officers were authorized to, and did, carry firearms, full-time paid peace officers of other states and the federal government who are carrying out official duties while in California, or any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer. . . ."  (Emphasis added).

If not exempt from the provisions of section 12025, a person must obtain a license to carry a firearm capable of being concealed.  (§§ 12050-12054.)  Section 12050 states in part:

"(a)(1)  The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of the county, may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

"(A)  A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

"(B)  Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

"(2)  A license issued pursuant to this section is valid for any period of time not to exceed one year from the date of the license, or in the case of a peace officer appointed pursuant to Section 830.6, three years from the date of the license.

"(b)  A license may include any reasonable restrictions or conditions which the issuing authority deems warranted, including restrictions as to the time, place, manner,

and circumstances under which the person may carry a pistol, revolver, or other firearm capable of being concealed upon the person."

We are asked whether investigators of the Board of Prison Terms ("Board") are required to have a license to carry a concealed firearm while off duty.[2] We conclude that they need not have a license, since they are exempt from the terms of section 12025 as "duly appointed peace officers" (§ 12027, subd. (a)(1)(A)).

The Board is composed of nine commissioners who meet with inmates at state prisons concerning applications for parole, parole conditions, revocations of parole, and denials of post conviction credits. (§§ 3040, 5075, 5076.1, 5077.) Investigators of the Board provide security for the commissioners and executive staff. They are employed in the state civil service "peace officer" class, having been designated peace officers by the Secretary of the Youth and Adult Correctional Agency. The investigators are also defined as peace officers under the terms of section 830.5, which states:

"The following persons are peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment and for the purpose of carrying out the primary function of their employment or as required under Sections 8597, 8598, and 8617 of the Government Code. Except as specified in this section, these peace officers may carry firearms only if authorized and under those terms and conditions specified by their employing agency:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) A correctional officer employed by the Department of Corrections or any employee of the Department of the Youth Authority having custody of wards or any employee of the Department of Corrections designated by the Director of Corrections of any medical technical assistant series employee designated by the Director of Corrections or designated by the Director of Corrections and employed by the State Department of Mental Health to work in the California Medical facility or *employee of the Board of Prison Terms designated by the Secretary of Youth and Adult Correctional Agency* or an employee of the Department of Youth Authority designated by the Director of the Youth Authority or any superintendent, supervisor, or employee having custodial responsibilities in an institution operated by a probation department, or any transportation officer of a probation department."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

---

[2]  Peace officers may carry concealable weapons, without licenses, while engaged in the performance of their duties under the terms and conditions specified by their employing agencies. (*Struessel* v. *City of Glendale* (1983) 141 Cal.App.3d 1047; *California State Employees' Association* v. *Way* (1982) 135 Cal.App.3d 1059; *California State Employees' Association* v. *Enomoto* (1981) 118 Cal.App.3d 599; 72 Ops.Cal.Atty.Gen. 167 (1989); 70 Ops.Cal.Atty.Gen. 20 (1987).)

(Emphasis added).

In 1987 we addressed the question whether district attorney investigators were exempt from the requirement of obtaining a license to carry a concealable weapon while off duty. We concluded that the investigators were exempt under section 12027 from the licensing requirements otherwise necessary to carry a concealable weapon while off duty. (70 Ops.Cal.Atty.Gen., *supra*, 27.) In reaching this conclusion, we quoted from our opinion in 63 Ops.Cal.Atty.Gen. 385, 388-390 (1980) dealing with Department of Corrections peace officers:

"`Turning to the words of section 12027, we find that the Legislature has exempted from the provisions of section 12025 "duly appointed peace officers." Department of Corrections peace officers are "duly appointed peace officers" while they are on duty at work or while they are off duty. In the absence of countervailing circumstances, it must be assumed that the Legislature meant to say what it said in drafting the statute. (*Tracy* v. *Municipal Court* (1978) 22 Cal 3d 760, 764.) If the Legislature had intended the exemption in section 12027 to apply to peace officers only when they were acting with peace officer authority it could have so stated.

"`We note that when the Legislature has determined to limit the exemption of section 12027 to a person while such person is acting in the course of a certain duty, it has done so. Thus, subdivision (a) of section 12027 provides that a person summoned by any peace officer to assist in making an arrest or preserving the peace is exempt "while he is actually engaged in assisting such officer." Likewise, subdivision (c) exempts members of the armed forces "when on duty." Subdivision (e) exempts certain guards and messengers "while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bouillon, bonds, or other thing of value within this state." Likewise, subdivisions (f), (g) and (h) exempt members of shooting clubs, licensed hunters or fishermen, and members of antique gun clubs during the period they are engaged in such activities. Had the Legislature wanted to place a similar restriction on peace officers and restrict their section 12027 exemption to duty hours, presumably it would have done so as in the case of the other classes referred to in that section." (70 Ops.Cal.Atty.Gen., *supra*, 25-26.)

In 72 Ops.Cal.Atty.Gen., *supra*, 167, we were presented with the question whether a county deputy probation officer must obtain a license to carry a concealed firearm while off duty. We concluded that he need not, stating in part:

"Under the provisions of section 830.5 probation officers are `peace officers' at all times. In prior opinions we have pointed out the distinction between the `status' of peace officer and the `authority' of a peace officer and that both need not exist at the same point in time. [Citations.] Applying this distinction to section 830.5 peace officers, we see from the introductory paragraph that they are `peace officers whose <u>authority</u> extends to any place in the state <u>while</u> engaged in the performance of their duties, etc. . . .' (Emphasis added.) Accordingly, under the wording of section 830.5, they have the `status' of a peace officer without any time limitation, thus at all times,

although they have the authority of a peace officer only <u>while</u> engaged in the performance of their duties, etc. The `while' clause modifies their authority, not their status. [Citation.]

"We conclude that probation officers are `peace officers' within the meaning of section 12027. Accordingly, since they are peace offices at all times, they are exempt from the proscriptions of section 12025 at all times. [Citations.]" (*Id.*, at p. 172.)

In 1993 the Court of Appeal reviewed various of our opinions dealing with the right of a peace officer to carry a concealed firearm while off duty. In *Orange County Employees Assn., Inc.* v. *County of Orange* (1993) 14 Cal.App.4th 575, the court ruled that a county could not preclude various county peace officers from carrying concealed firearms while off duty. It stated:

"Penal Code sections 830.33, 830.35, and 830.36 all state that officers employed in those respective categories are peace officers. Each goes on to add, however, `Those peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency.'

"The parties agree this limiting language allows the agencies named in these sections to regulate the carrying of firearms, concealed or not, by on-duty personnel. They also agree the statutes cannot reasonably be read to take away from off-duty officers the same right to bear arms enjoyed by other citizens. For example, vacationing deputy coroners could not be required to seek permission from the county to visit a rifle range or go duck hunting. The question is, then, what is the effect of the limiting language of these specific sections on the grant of authority to carry concealed weapons `to other duly appointed peace officers' in Penal Code section 12027?

"We will rely upon a series of five opinions issued by the Attorney General to help resolved this dispute. They are persuasive not only for their reasoning, but for the Legislature's reaction--or lack thereof--as well. While not binding on us, the opinions of the Attorney General are entitled to great weight. (See *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875, 883; *Fremont Police Assn.* v. *City of Fremont* (1975) 48 Cal.App.3d 801, 803.)

"In May of 1980, the Attorney General decided that `Department of Corrections peace officers are "duly appointed peace officers" while they are on duty at work or while they are off duty.' (63 Ops.Cal.Atty.Gen. 385, 388 (1980).) Those officers were peace officers per Penal Code section 830.5 and consequently enjoyed the exemption in section 12027 from the ban on concealed firearms. Section 830.5 did not then purport to regulate the carrying of firearms, however.

"In apparent response, the Legislature added the following language effective in September of 1980: `Such peace officer may carry firearms only if authorized and under such terms and conditions as are specified by their employing agency . . . .' The Attorney General answered this question the year after the statutory change: `Is a

Department of Corrections peace officer, as defined in Penal Code section 830.5, permitted to carry concealed a concealable firearm without the license required by Penal Code section 12025?'  (64 Ops.Cal.Atty.Gen. 832 (1981).)  He concluded as follows:  `[T]he authority to carry firearms is . . . qualified, i.e., such peace officer may carry firearms *only if authorized and under such terms and conditions* as are specified by the Department of Corrections.'  (*Id.*, at p. 835, italics in original.)

"The Attorney General's opinion also noted, `The firearms provision of section 830.5 does not distinguish between firearms carried concealed or openly, or between firearms which are concealable or otherwise.  Consequently, the act of carrying concealed a concealable firearm is within the purview of the statute.  (64 Ops.Cal.Atty.Gen., *supra*, at pp. 835-836.)

"The author added a problematic phrase, however; and it proved to be the understated key to the opinion:  `[T]he exemption in section 12027 is now qualified by the authority of the Department of Corrections, under section 830.5, to allow or disallow the concealed carrying of concealable firearms or to set the terms and conditions of such carrying by its officers without a license *while acting as peace officers*.'  (64 Ops.Cal.Atty.Gen., *supra*, at p. 837, italics added.)  We say `problematic' because off-duty officers sometimes must act as peace officers, as we consider more fully anon, and in that sense are never off duty.  Taken literally, the emphasized language would imply that at the very moment an off-duty officer might need it most, i.e., when thrust into the role of a peace officer, it would become unlawful to carry a firearm contrary to the employer's rules.

"The Attorney General was next asked, `Does the Chief of the California State Police Division have the authority to prohibit or allow Security Officers of the California State Police Division to carry concealed firearms while off duty?'  (65 Ops.Cal.Atty.Gen. 527 (1982).)  Penal Code section 830.4, the applicable statute, provided, `Such peace officers may carry firearms only if authorized by and under such terms and conditions as are specified by their employing agency . . . .'

"The Attorney General answered the question in the negative, reasoning `the Legislature did not intend to grant the employing agency any such control over the nonemployment related conduct of its security officers.'  (65 Ops.Cal.Atty.Gen., *supra*, at p. 533.)  The opinion also persuasively pointed out peace officers have general obligations that go beyond their duties to a particular agency.  For example, Penal Code section 142 requires any officer to receive custody of any person who has been arrested by a citizen.  Every peace officer is obliged to enforce the Alcoholic Beverage Control Act and report every violator, and failure to do so is a misdemeanor.  (Bus. & Prof. Code, § 25619.)  The Attorney General referred to other examples of extraneous duties as well.  (65 Ops.Cal.Atty.Gen., *supra*, at p. 534; Health & Saf. Code, § 4477 [`Every state fish and game warden, police officers of cities, sheriffs and their deputies and other peace officers of the State of California, within their respective jurisdictions, shall enforce the provisions of this article.']; Fish & G. Code, § 10508 [similar].)

Finally, the opinion recognized that peace officers have the right to make arrests for offenses committed in their presence for violations unrelated to their particular employment. (Pen. Code, § 836.)

"The next opinion in the series addressed this question: `Does a district attorney have the authority to prohibit or allow the carrying of firearms by welfare fraud investigators employed in his office while such persons are off duty?' (70 Ops.Cal.Atty.Gen. 20 (1987).) Based on similar statutory language, the Attorney General concluded that a district attorney has no such power. He provided additional reasons: "Although a peace officer is not required to have a license as set forth in section 12027, this exemption means only that he may carry concealed a concealable weapon without committing the crime specified in section 12025. It does not mean, of course, that he may carry a weapon while on duty if prohibited by his employer. Employers normally control the (lawful) activities of their employees in employment situations. Different considerations are present when determining whether a weapon should be carried while performing employment-related duties. In noting that a city may place more restrictive standards upon the conduct of its police officers in the use of firearms than [those] applicable to private citizens, the court in *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364, 375-376, stated: [¶] "[T]he city, as employer of the officer and a potential codefendant in a suit for wrongful death or injury, has an interest in the officer's conduct which it lacks toward a private citizen. . . . Police officers are constitutionally subject to many burdens and restrictions that private citizens are not."' (70 Ops.Cal.Atty.Gen., *supra*, at p. 27.)

"Finally, in 72 Ops.Cal.Atty.Gen. 167 (1989), the Attorney General reached a similar determination with respect to the right of deputy probation officers to carry concealed firearms while not on duty. Penal Code section 835, the statute designating them as peace officers contains this provision: `Except as specified in this section, these peace officers may carry firearms only if authorized and under those terms and conditions specified by their employing agency.' The opinion relied on its four predecessors on the points pertinent here and added no new analysis or relevance to the present case.

"Citing various pieces of legislative history potentially proving the Legislature *originally* intended to permit agencies to regulate the carrying of concealable firearms both on and off duty, county counsel argues the Attorney General is simply wrong. County counsel also reminds us the statutes themselves make no distinction between on- and off-duty peace officers. Finally, he attacks the Attorney General's assumptions that (1) because the statutes speak of `firearms' and not concealable weapons they must not refer to off-duty activities since the Legislature could not have intended to require employer approval for off-duty hunting trips and the like, and (2) employers would have no reason to control the carrying of firearms by their off-duty officers.

"There is no reason to attempt to divine what the Legislature intended in 1980, however, and we decline the invitation to do so. As noted earlier, the Legislature's reactions to the Attorney General's interpretations tell the story.

"In 1982, the Attorney General interpreted the language, `may carry firearms only if authorized and under terms and conditions specified by their employing agency,' to refer only to on-duty officers. This is the identical wording contained in the implementing statutes we consider here (Pen. Code, §§ 830.33, 830.35, and 830.36). When those statutes were passed in 1989, the Legislature was presumably aware of the Attorney General's interpretation. (See *Henderson* v. *Board of Education, supra*, 78 Cal.App.3d at p. 883.) Whatever the Legislature intended in 1980, *in 1989*, it surely intended the scheme as explained in the Attorney General's opinions.

"Moreover, in various amendments to Penal Code section 830.5 over the past decade . . . the Legislature has specifically authorized on- and off-duty regulation of concealable firearms of state correctional officers. Had it intended county officers to be subjected to similar controls, it surely would have said so.

"The Supreme Court put it this way: `[A]lthough [*People* v.] *Lobaugh* [(1971) 18 Cal.App.3d 75] has been followed by the Courts of Appeal since 1971, the Legislature has not reacted to it despite repeated scrutiny of [Vehicle Code] section 23153. Section 23153 (or its predecessor, former § 23101) was amended in 1972, 1976, 1977, 1978, 1980, 1981, 1982, and 1983, with a major rewriting and renumbering in 1981. "Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." [Citations.] "There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts." [Citation.]' (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353.)

"So it is here. Similar presumptions apply in the case of Attorney General opinions (*Henderson* v. *Board of Education, supra,* 78 Cal.App.3d 875, 883), and among the statutes we have reviewed the Legislature has sought to avoid the Attorney General's interpretation only with respect to state correctional officers covered by Penal Code section 830.5. We must assume the Legislature knew what it was doing when it employed the language of the statutes at issue in this case. If the county wishes to restrict the carrying of concealed weapons by the affected officers, it will have to apply to the Legislature." (*Id*., at pp. 577-583; fns. omitted.)

Accordingly, while the Legislature has expressly authorized certain peace officers to carry firearms while off duty (§ 830.5, subd. (c) ["The following persons may carry a firearm while not on duty: a parole officer of the Department of Corrections or the Department of Youth Authority, a correctional officer employed by the Department of Corrections or any employee of the Department of Youth Authority designated by the Director of Corrections"]), the issue of licensure presents a separate issue. Under section 12027, subdivision (a)(1)(A), "duly appointed peace officers" are exempt from

the prohibition against carrying a concealed firearm contained in section 12025.  As long as the person has the status of being a duly appointed peace officer, the statutory exemption for possessing a firearm applies regardless of when or where the person may exercise peace officer powers.  Such has been our consistent interpretation for 15 years, recently approved by the Court of Appeal in its *Orange County* decision.

　　　　　We conclude that investigators of the Board are not required to have a license to carry a concealed firearm while off duty.

* * * * *