[Civ. No. 2931.  First Appellate District, Division One.—October 21, 1919.]

C. F. O'BRIEN, Respondent, v. L. E. WHITE LUMBER COMPANY (a Corporation), Appellant.

[1] ACTION IN QUANTUM MERUIT—PERSONAL SERVICES—USE OF AUTOMOBILE—WANT OF LEGAL CLAIM.—In this action to recover a given sum as the reasonable value of work and labor and compensation for the use of plaintiff's automobile in the service of the defendant, which sum the complaint alleged was the balance due upon an open and current account between the plaintiff and the defendant, although the claim of plaintiff for back pay was one that might well have been addressed to the generosity of the defendant, plaintiff failed to show any legal claim upon the defendant either for salary or for the use of his automobile.

[2] ID.—USE OF AUTOMOBILE IN DEFENDANT'S BUSINESS—FURNISHING OF SUPPLIES BY DEFENDANT—COMPENSATION.—Where the use of plaintiff's automobile in the defendant's business was made by plaintiff without any intention of making any charge therefor, other than the value of the gasoline, oil, and tires used in its operation which he drew from the defendant, and was therefore gratuitously given, except to the extent it might be compensated by the value of such supplies, such use cannot form a legal basis for a demand for compensation therefor.

APPEAL from a judgment of the Superior Court of Mendocino County.  J. Q. White, Judge.  Reversed.

The facts are stated in the opinion of the court.

Metson, Drew & Mackenzie, Preston & Preston and R. G. Hudson for Appellant.

W. D. L. Held and J. W. Kingren for Respondent.

RICHARDS, J.—The plaintiff brought this action against the defendant to recover the sum of $2,189 as the reasonable value of work and labor and compensation for the use of his automobile in the service of the defendant, which sum the complaint alleges is the balance due upon an open and current account between the plaintiff and defendant. The latter answered, denying any liability whatever. A trial had before a jury resulted in a verdict in favor of the plaintiff for $1,875, for which amount judgment was rendered. The defendant appeals, specifying various alleged errors of law and particularly that the verdict is unsupported by the evidence.

The facts giving rise to the dispute may be briefly summarized as follows: The plaintiff was an employee of the defendant, having sustained that relation to it for some thirty years. In the month of October, 1914, he was defendant's superintendent, his duties as such relating to that part of defendant's business carried on in and around Point Arena, and which consisted of lumbering, the manufacture and shipping of railroad ties, the conduct of a mercantile store, and a limited amount of simple farming, and received for his services a salary of two hundred dollars per month. On the 29th of that month the president of the company addressed to him a letter, the terms of which are as follows:

"Dear Frank:—

"As ties and everything have gone to the 'bow-wows' we will have to put you for the present on half time, beginning November 1, 1914. I dislike to do this but cannot help it. As soon as things brighten you will be given full time again. Please advise me if this is satisfactory. We have made cuts in salaries all over and are letting off some men.

"Cut Emery's salary to $75.00; cut McCallum to $75.00. If they are not satisfied we will get somebody else who will be because we cannot continue as things are.

"Very truly yours,
"F. C. DREW."

Testifying to the receipt of this letter, O'Brien said: "I think I answered on receipt of it, probably the same day or the next day. I cannot remember the exact wording of my

letter but as near as I can remember I told him I had shown this letter to McCallum and Emery and they had accepted the cut, and for myself I was willing to help my employer out by going on half time during the financial stringency. I then went ahead with my work the same as I had been." Thereafter and until the defendant sold its business nearly two years later the reduced salary was paid to the two employees named in the letter, and the plaintiff received and accepted as his monthly salary the sum of one hundred dollars, performing, however, practically the same duties as before, and devoting the same amount of the time to the defendant's business. He had access at all times to his account carried on the books of the defendant, wherein he was credited monthly with the sum of one hundred dollars as salary and charged with merchandise purchased by him in the company's store, and with sums of money drawn by him, and was familiar with the contents of this account. From the letter set forth above O'Brien understood "that they [the company] were just short of funds and that was about all that they could afford to pay at that time until times got better or they sold out, and that I was to receive half pay until times got better." He further testified:

"Q. Well, you understood, didn't you, Mr. O'Brien, that you was just to get a hundred dollars a month until times got better?

"A. Yes, sir.

"Q. For your full time, that's right, isn't it?

"A. I understood that he was to pay me a hundred dollars a month until times got better, and from the past dealings I had with him he would pay me the balance when times got better or he sold.

"Q. Well, and times never got any better until they sold out, as you say, never got any better, did they?

"A. No.

"Q. Got worse, didn't they?

"A. Yes, I think they did, if anything."

In April, 1916, the defendant sold its business and property. Shortly thereafter O'Brien wrote to the president of the company a letter in which he said: "Having knowledge of your fairness in all my past dealings with you I am asking if you will not pay me full salary for the past nineteen months," meaning, of course, by full salary the

sum of two hundred dollars per month instead of the one hundred dollars per month that had been paid to him. O'Brien also called on and had some conversation with the president of the defendant in reference to this request, but it was finally refused, and on November 18, 1916, O'Brien rendered a bill to the defendant for the sum of $1,750, being the difference between one hundred dollars and two hundred dollars per month for the period of seventeen and one-half months. This bill the defendant declined to pay; and shortly thereafter O'Brien brought this action for the sum of $2,189, the difference between that amount and the $1,750 previously demanded, being claimed as compensation for the use in defendant's service of plaintiff's automobile. It appears that O'Brien had from a time dating back to about six months before the reduction of his salary owned an automobile which he occasionally used while attending to the business of the defendant, the latter furnishing to O'Brien without charge the gasoline, oil, and tires used in its operation. No previous demand for compensation for this service had ever been made on defendant by O'Brien, not even upon the occasion when in November, 1916, he rendered his bill for back salary.

[1] We think it is quite clear from the foregoing statement of facts that O'Brien had no legal claim upon the defendant either for salary or for the use of his automobile. It is apparent that the letter of the president of the company of November 29, 1914, was understood both by the defendant and O'Brien to mean that from that time forward his salary was to be at the rate of one hundred dollars per month without other change in the conditions of his employment, and that he accepted the reduction of salary. There is some evidence in the record to the effect that the expression "half time" refers to the proportion of the day an employee works; but while it may be conceded that such is the literal meaning of the expression and that it is frequently used in that sense, it is equally true that in the present case it was used by the defendant and understood by O'Brien as referring to the amount of his monthly salary. [2] It is also abundantly clear from the evidence that the use of O'Brien's automobile in the defendant's business was made by O'Brien without any intention of making a charge therefor other than the value of the sup-

plies which he drew from the defendant, and was therefore gratuitously given except to the extent it might be compensated by the value of such supplies. Such use, therefore, cannot form a legal basis for the plaintiff's demand.

The claim of plaintiff for back pay was one that might well have been addressed to the generosity of the defendant as was done, but we can find no legal foundation for it in the evidence which, we are convinced, affords no basis for the verdict of the jury in the plaintiff's favor.

The judgment is therefore reversed.

Waste, P. J., and Kerrigan, J., concurred.