[Civ. No. 24172.   Second Dist., Div. Three.   July 29, 1960.]

JAMES BLASE, Appellant, v. FLORINA PEDLOW et al.,
Respondents.

Harvey Fierstein for Appellant.

Walleck, Olstyn, Johnson & Shane for Respondents.

FORD, J.—The plaintiff appeals from a judgment adverse to him in an action in which he sought an accounting and other relief.

The nature of the controversy may be discerned from the findings of fact of the trial court, pertinent portions of whch are as follows: 1. During the first part of 1955 and for sometime prior thereto, the defendants Florina Pedlow and Douglas Pedlow were engaged in the business of operating an auto towing and impounding establishment, doing business under the firm name and style of Pedlow's 24-Hour Towing Service, in North Hollywood. 2. During the first part of 1955, plaintiff was an employee of the defendant Florina Pedlow under an oral agreement whereby he was to perform certain labor for Florina Pedlow in the towing service and was to receive as compensation the sum of $2.00 for each tow job and, in addition, the free use of the residence located upon the land owned by Florina Pedlow and adjacent to the towing establishment. 3. There was never any agreement, oral or written, between the plaintiff and the defendant Florina Pedlow whereby Florina Pedlow was to furnish to the plaintiff any automobile space or stalls upon that defendant's property for the use by the plaintiff in an automobile repair business to be conducted by him. 4. Following the employment of the plaintiff as aforesaid, the plaintiff was further employed by Florina Pedlow under an oral agreement pursuant to which

she was to supply all of the necessary land, fixtures and capital to establish an auto wrecking business upon real property to be leased by her. Under the terms of such employment, the plaintiff was to contribute his skill and knowledge in the auto wrecking business and was to be the manager thereof. As compensation, the plaintiff was to receive a sum equal to one-half of the net profits realized in the auto wrecking business of the defendant Florina Pedlow. 5. In order to induce Florina Pedlow to enter into the auto wrecking enterprise, the plaintiff represented to her that he had had extensive experience and had ability in the auto wrecking business. Contrary to such representations, the plaintiff had had no previous experience and had no ability in the auto wrecking business. 6. From the time of the oral agreement, the plaintiff did not fully perform all his duties and obligations. 7. The plaintiff and defendant Florina Pedlow never entered into any agreement of partnership of any nature whatsoever and they have never been partners. 8. The plaintiff acted as manager of the auto wrecking business until his discharge from such employment on November 29, 1956. Thereafter, the defendant Florina Pedlow discontinued the operation of that enterprise and did not engage in such operation after November, 1956, except that she continued to receive income from the sale of parts, merchandise, metal and scrap and that some or part of these items were part of the auto wrecking enterprise at the time of the discharge of the plaintiff. All of such sales and receipt of income by Florina Pedlow occurred in the process of discontinuing operation of that business. She has not paid to the plaintiff any portion of the sums so received. 9. During the entire operation of the auto wrecking enterprise, that business, including all of its assets, was the property of Florina Pedlow and no part thereof became the property of the plaintiff. 10. Periodically during the operation of the auto wrecking enterprise and during the entire time of the employment of the plaintiff therein, the defendant Florina Pedlow fully and fairly accounted to the plaintiff for the gross profits, operating expenses and net profits resulting from such operation. Upon each such accounting, Florina Pedlow fully paid to the plaintiff his compensation and share of such profits. The plaintiff accepted each such accounting and payment so made to him without complaint up to the time of his discharge in November, 1956. From April 24, 1956, to September 25, 1956, it was orally agreed between the plaintiff and the defendant Florina Pedlow that, in lieu of any portion of the

net proceeds realized from the operation of the towing and wrecking business owned by Florina Pedlow, the plaintiff should receive as his sole compensation for any services rendered the sum of $75 per week. Following the date of September 25, 1956, the plaintiff returned to the former arrangement with Florina Pedlow and was to receive as his compensation for his services a sum equal to one-half of the net profits realized from the operation of the wrecking business. 11. The plaintiff is not entitled to an accounting from the defendants. 12. No "sum or thing" is due to the plaintiff from any defendant. 13. With relation to the third cause of action, between December 15, 1954, and November 29, 1956, the plaintiff did not render services to the defendants in connection with the maintenance, construction and operation of a garage, towing, emergency service, impounding and auto wrecking business at the special instance and request of the defendants for which services the defendants promised to pay to the plaintiff the reasonable value thereof. The defendants are not indebted to the plaintiff in the sum of $35,000 "or any other sum or at all for any reason or obligation whatsoever."

As conclusions of law from the foregoing findings of fact, the trial court determined that no partnership ever existed between the plaintiff and Florina Pedlow and Douglas Pedlow or either of them, that the plaintiff was not entitled to an accounting from them or either of them, and that the plaintiff was entitled to nothing from the Pedlows.

The appellant asserts that the trial court erred in ruling that he was not entitled to an accounting and in refusing to allow him to recover "for the reasonable value of services he rendered in performing the aforementioned improvements on the real property which were required to correct the deficiencies in the property so that same could meet the standards of the Department of Motor Vehicles for an automobile wrecking license."

The settled statement (rule 7, Rules on Appeal) shows that the trial court thoroughly examined the relationship of the parties and the pertinent financial matters for the purpose of determining whether any amount was owed to the plaintiff. The court concluded that plaintiff was not entitled to recover. There was substantial evidence to support that determination. The plaintiff testified that he was to receive one-half of the net profits of the auto wrecking enterprise which would be computed by subtracting from the gross income of the business the cost of the wrecked cars and the other expenses of operat-

ing the wrecking yard, including rental of $100 per month to be paid to the defendant Florina Pedlow for the use of her land. He said, "I sold most of the parts, established most of the prices, and kept most of the records myself." He further testified that during the year 1955 he received checks from Mrs. Pedlow in the total amount of $1,439.02 as his share of the net profits. The amount so received by him for the year 1956 was $1,419.76. At no time prior to his discharge in November of 1956 did he request an accounting or state that he was entitled thereto. When he went to Nevada late in November, 1955,[1] for the purpose of obtaining a divorce from his wife, he received a loan of $500 from Mrs. Pedlow to cover travel expenses and attorney's fees. That loan was not repaid. He also testified that for at least three months during the period of his employment he worked for a flat $75 a week and that "we went back to the old deal approximately in October."

Mrs. Pedlow testified that it was agreed that she would receive $100 per month as rental for the use of her land. The rental was to be paid from the gross receipts of the wrecking enterprise but, because that enterprise never seemed to reach the expected capacity, the rental was never paid and she still had an outstanding claim for $2,300 therefor. Mrs. Pedlow further testified that she rendered an accounting to the plaintiff each month with respect to the expenses and gross receipts. In each instance, the plaintiff appeared to be satisfied and accepted her check for one-half of the net profits of the enterprise.[2] She purchased no capital equipment from the gross or net proceeds of the operation of the auto wrecking venture with the exception of a set of oxyacetylene torches valued at $50.

Mrs. Pedlow testified that after she discharged the plaintiff on November 29, 1956, she discontinued the operation of the wrecking yard. She gave her accountant, Harry Barnett, a

[1]While the testimony of the plaintiff as set forth in the settled statement places this loan incident as having occurred in November, 1955, the testimony of Mrs. Pedlow was that it occurred in November, 1956, and that the plaintiff's delayed return from Nevada precipitated his discharge.

[2]On cross-examination, she testified that "at the end of each month, Jimmy [plaintiff] and I would sit down and we would go through the sales and expenses. He would show me what sales he had made and I would show him what the expenses were for that month. Whenever there was a profit, I would split it with him and give him a check. At no time did he seem displeased with this method."

list of the monies received from the "close-out" of the wrecking operation.

After the case had been argued and submitted to the court, the trial court requested that the plaintiff present further testimony from the accountant as to the profit realized or loss sustained in the operation of the wrecking yard until such operation ceased after the plaintiff's discharge. The accountant, Mr. Barnett, thereafter testified that he had received from Mrs. Pedlow all of her checks, ledgers and other memoranda covering such operation for the years 1955 and 1956. He stated that, because Mrs. Pedlow would split with the plaintiff what appeared to be a profit for a particular month, it appeared that the wrecking enterprise was making a profit. He testified that in the year 1955, taking into consideration the operating expenses but excluding the rental to be paid to Mrs. Pedlow for the use of her land, the venture made a profit of $1,045.19. For the year 1956, using the same basis, the auto wrecking enterprise sustained a net loss of $91.42.[3]

Because the plaintiff stated in a brief filed by him that there was evidence that sales of scrap metal and salvaged parts in the month of November, 1956, amounted to $3,500, the trial court ordered a second supplemental hearing. The only evidence produced by the plaintiff was with respect to two sales of scrap metal, one for $207.70 and the other for $285, and a receipt relating to a sale by Mrs. Pedlow of ten transmissions for the sum of $50. Called by the plaintiff pursuant to the provisions of section 2055 of the Code of Civil Procedure, Mrs. Pedlow testified that these amounts were the only monies received by her for the "clean-up" of the auto wrecking enterprise and lot.

The settled statement further shows that during the first supplemental hearing ordered by the court, Mrs. Pedlow's attorney agreed to have in his office all of the cancelled checks, ledgers and all sales slips and other memoranda covering the entire period of her association with the plaintiff. These records were thereafter kept in the attorney's office for about three weeks. On one occasion for about one-half hour, the attorney for the plaintiff examined such records. Thereafter the attorney stated to the trial court that "he simply did not have the time, nor did his client have the means to go over the records more and in greater detail."

---

[3] The profit and loss statements prepared by the witness showed that the plaintiff received $5,343.03 as compensation for tow jobs and as proceeds of the wrecking enterprise for the year 1956.

The record thus discloses that, after a patient and painstaking inquiry as to the facts, the trial court was warranted in reaching the conclusion that the plaintiff had received at least his share of the net profits, if not more than his just portion. ██ As stated by Mr. Justice Sloss in *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, at page 142 [134 P. 1157] : ". . . it must be borne in mind that, in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." The appellant's attack upon the disposition of the case by the trial court is similar to that made in *Davis* v. *California Motors,* 73 Cal. App.2d 241 [166 P.2d 52]. The court there said, at pages 246-247 : "The appellant claims that the court 'erred in not ordering an accounting as prayed for.' There can be no doubt that the representative of a deceased party to a joint venture has a right to an accounting on dissolution. The cases cited by appellant so hold [citations]. It is also true that in the absence of a reference, a mere statement of the balance due in the findings of the court is not a proper disposition of the action. (*Whann* v. *Doell,* 192 Cal. 680 [221 P. 899].) 'On the other hand, the contention that an account must be stated in accepted bookkeeping fashion cannot be maintained. . . . *Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how these issues were disposed of* by the trial court will suffice for the purpose, whether the matter appears from the findings, the decree or a bill of exceptions, showing the controversy, and the disposition thereof. . . .' (*Whann* v. *Doell, supra,* 684, emphasis added; *Margolis* v. *Leonard & Holt,* 94 Cal.App. 716 [271 P. 758] ; *Sears* v. *Rule,* 27 Cal.2d 131, 149 [163 P.2d 443] ; 14 Cal.Jur. 769.) The record in the instant case in our opinion complies with the requirements of *Whann* v. *Doell, supra.*" And, at pages 247-248, the court expressed its conclusion in language which is particularly applicable to the case presently before this court: "In our opinion the appellant had in the trial court, the accounting for which she prayed. We are satisfied, moreover, that the court's conclusion was correct. The fact that the conclusion of law says 'that plaintiff is not entitled to any relief' after a three-day trial in which the accounts were thoroughly gone into can only mean that, after a full hearing and accounting, she is not entitled to

recover any money judgment from the respondents." (See also *Baxter* v. *Krieger*, 157 Cal.App.2d 730, 732 [321 P.2d 879].)

In connection with the matter just discussed, we have not overlooked the argument of the appellant to the effect that the court erred in placing upon him the burden of showing the sums of money received by the defendants Pedlow after the termination of the relationship between the appellant and Mrs. Pedlow. Obviously, that evidence could be more readily produced by Mrs. Pedlow, who liquidated the business and received the proceeds thereof, than by the appellant. The contention, however, presents no question of merit on this appeal because it appears that, in any event, the subject-matter was fully covered by the evidence produced by the efforts of the appellant. There is no indication of any available evidence which was not before the court. The lack of conflict in the evidence renders unprofitable any inquiry as to the burden of proof. (*Cf. Meads* v. *Deener*, 128 Cal.App. 328, 331 [17 P.2d 198].) Furthermore, nothing in the record on appeal suggests that the appellant made the contention before the trial court that an undue or improper burden was being placed on him. If we assume that there was an error in procedure on the part of the trial court, it has not resulted in a miscarriage of justice. (See *Tranchina* v. *Arcinas*, 78 Cal. App.2d 522, 527 [178 P.2d 65].)

We turn now to the appellant's contention that he should have had judgment for the reasonable value of his services in preparing the property for use in the auto wrecking venture. We learn from the settled statement that, before the operation of that enterprise commenced, Mrs. Pedlow made an application in her name for an automobile wrecker's license. The initial application was not approved because the condition of the premises to be used was not of the nature necessary under the law. Thereafter the parties undertook to correct the deficiencies. This required the removal of some existing structures and the construction of a fence. In addition, the ground had to be prepared for black-topping. The appellant testified that he "worked in his spare time" in the demolition of the structures and the construction of the fence. He used none of his own money in preparing the property for black-topping. He admitted that he made no demand for payment for his labor and effort in making the property ready for use in the enterprise. His testimony was that he considered it to be his contribution toward the venture. Mrs. Pedlow personally paid for the necessary fencing and the black-topping.

The trial court was justified in reaching the conclusion that the appellant did not undertake the labor to which he testified with the understanding or expectation that he would receive monetary compensation therefor. The inference was reasonable that such effort on his part was his contribution toward the goal of having the property in such shape that the wrecking operations could proceed and was undertaken without any intent on his part to charge therefor. Consequently, the appellant failed to prove that there was a basis upon which a recovery by him could be sustained. (*Hecker* v. *Baker*, 19 Cal. App. 667, 669 [127 P. 654]; *Boucher* v. *Peasley*, 95 Cal.App. 532, 534 [272 P. 1087]; *O'Brien* v. *L. E. White Lumber Co.*, 43 Cal.App. 703, 706-707 [185 P. 514]; see *Payne* v. *Bank of America*, 128 Cal.App.2d 295, 304 [275 P.2d 128].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.