[No. A107130. First Dist., Div. One. Oct. 11, 2005.]

In re WORK UNIFORM CASES.

## COUNSEL

Carroll, Burdick & McDonough, Ronald Yank, Gary M. Messing, Timothy K. Talbot and Gregg McLean Adam for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Miguel A. Neri, Fiel D. Tigno and Karen Kiyo Huster, Deputy Attorneys General, for Defendant and Respondent State of California.

Porter, Scott, Weiberg & Delehant, Michael J. Baytosh and Chris M. Egan for Defendant and Respondent County of Yolo.

Jeffrey Blair; Janet Tulk; Hanson, Bridgett, Marcus, Vlahos & Rudy, Douglas H. Barton and Amy L. Keyser for Defendants and Respondents The Regents of the University of California and Lawrence Livermore National Laboratory.

Dennis A. Marshall, County Counsel, and J. Wesley Merritt, Chief Deputy County Counsel, for Defendant and Respondent County of Fresno.

Gregory Oliver, County Counsel, and Walter de Lorrell III, Deputy County Counsel, for Defendant and Respondent County of Tuolumne.

Ann Miller Ravel, County Counsel, Martin H. Dodd, Assistant County Counsel, and Marcy L. Berkman, Deputy County Counsel, for Defendant and Respondent County of Santa Clara.

Betts & Wright, James B. Betts and Joseph D. Rubin for Defendant and Respondent City of Fresno.

OPINION

MARCHIANO, P. J.—A public employee's uniform is an identifying mark of distinction and a source of pride for the employee and those he or she serves. But who bears the financial burden for mandated uniforms? A number of public employees filed class action complaints against their employers[1] alleging that the failure to compensate all members of the plaintiff class for the actual cost of purchasing, replacing, cleaning and maintaining required work uniforms constituted violations of the indemnification provisions of Labor Code section 2802.[2] The trial court in these coordinated actions sustained demurrers without leave to amend as to all complaints, and the employees appealed. We hold that section 2802 does not require public entities to pay claims for costs related to employee work uniforms and affirm.

## BACKGROUND

The coordinated proceeding consists of seven cases filed by employees against their employers, which include the state, the Regents of the University of California, two charter counties (Fresno, Santa Clara), two general law counties (Yolo, Tuolumne), and a charter city (Fresno), seeking indemnification under section 2802 for the actual cost of uniforms and maintenance.[3] *Goshorn et al. v. State of California* was filed as a class action, with named plaintiffs who are employees of various state departments including the Department of Corrections, California Youth Authority, Department of Forestry, California Conservation Corps, Military Department, Department of Parks and Recreation and Department of Developmental Services. *Hostetter v. County of Yolo* is also a class action with one named plaintiff who is a deputy sheriff. *Allen et al. v. Lawrence Livermore Laboratory and Regents of the University of California* is a class action with two named plaintiffs who are uniformed employees of the Lawrence Livermore Laboratory (the Regents).[4] *Robinson et al. v.*

---

[1] *Goshorn v. State of California* (Super. Ct. S.F. City and County, No. CGC-02-416051); *Hostetter v. County of Yolo* (Super. Ct. Yolo County, No. CV03-653); *Allen et al. v. Lawrence Livermore Laboratory and Regents of the University of California* (Super. Ct. Alameda County, No. R G03085207); *Robinson et al. v. County of Fresno* (Super. Ct. Fresno County, No. 03 CECG 01480); *Davis v. County of Tuolumne* (Super. Ct. Tuolumne County, No. CV 50113); *Hearin v. County of Santa Clara* (Super. Ct. Santa Clara County, No. 103 CV008646); and *Oliver et al. v. City of Fresno* (Super. Ct. Fresno County, No. 03 CECG 04542).

[2] Unless otherwise indicated, all statutory references are to the Labor Code.

[3] The status of the various entities is reflected on the Web sites of the California State Association of Counties and the League of California Cities. (<http://www.csac.counties.org/default.asp?id=110.html> [as of Oct. 11, 2005]; <http://www.cacities.org/index.jsp?zone=locc&previewStory=571.html> [as of Oct. 11, 2005].)

[4] The Regents note that the Lawrence Livermore Laboratory is not a separate legal entity, but that the University of California operates the laboratory under contract with the United

*County of Fresno* is a class action with three named plaintiffs who are deputy sheriffs.

On June 18, 2003, plaintiffs in the *Goshorn et al. v. State of California* action filed a petition for coordination of the above four actions with the Chair of the Judicial Council. The Judicial Council authorized the presiding judge of the San Francisco Superior Court to assign a judge to hear the coordination petition. On July 28, 2003, the presiding judge assigned a coordination motion judge and, on October 27, 2003, a trial judge.

On October 15, 2003, the coordination judge ordered coordination of the actions as the *Work Uniform Cases*.

*Davis v. County of Tuolumne* was filed on October 6, 2003 as a class action. Craig Davis is a deputy sheriff. *Hearin v. County of Santa Clara* was filed on November 7, 2003 as a class action. The named plaintiff is a county park ranger.

On December 29, 2003, the court granted a petition to add the *Davis* and *Hearin* cases to the coordinated actions. *Oliver et al. v. City of Fresno* was filed on December 17, 2003 as a class action. The named plaintiffs are employed by the Fresno Police Department. On February 5, 2004, the parties stipulated to add the *Oliver* case to the coordinated actions.

All of the defendant public entities demurred to the various complaints. Plaintiffs filed a combined opposition to all demurrers on February 13, 2004. After a hearing on March 1, 2004, the coordination trial judge sustained all demurrers without leave to amend.

The court explained that article XI of the state Constitution vests the power to prescribe the terms and compensation for employees with the city and county defendants, and that if section 2802 were interpreted to require payment for uniform purchase and maintenance, it would infringe on that constitutional delegation of power. As to the State of California, the court noted that Government Code section 19850.1 requires state employees to be responsible for purchase of uniforms, so the only issue as to the state was cleaning and maintenance of uniforms. The court determined that the state had the constitutional right to negotiate wage conditions for its employees.

States Department of Energy. (See, e.g., *Regents of Univ. of Cal. v. Doe* (1997) 519 U.S. 425, 426–427 [137 L.Ed.2d 55, 117 S.Ct. 900].)

Regarding the Regents, the court cited its particular constitutional status and ruled that no statewide concern was present to preempt the Regents' authority over employee matters.

Notices of appeal were filed in all of the consolidated cases.

## DISCUSSION

Section 2802 is located within division 3 of the Labor Code, which is entitled "Employment Relations." (§ 2700.) Chapter 2, which contains section 2802, concerns the obligations of an employer, including the obligation to indemnify an employee for the employer's want of ordinary care, the obligation to safeguard a musician's musical instruments when located on the employer's premises, and defenses in actions for personal injury or death of an employee. (§§ 2800, 2800.1, 2801.)

Section 2802 provides: "(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."[5]

The sole issue raised by the complaints in these consolidated actions is whether section 2802 requires the public entity employers in this case to pay for the entire cost of purchase and maintenance of uniforms required for work. We examine this issue in light of the governmental entity status of each of the defendants.

*City and County Defendants Are Charged with Fixing Terms of Employment*

Yolo County and Tuolumne County are general law counties. California Constitution, article XI, section 1, subdivision (b), applies to all counties and provides as relevant: "The governing body [of each county] shall provide for

---

[5] This section was enacted in 1937 and was derived from former Civil Code section 1969. (Deering's Ann. Lab. Code (1991 ed.) foll. § 2802, p. 294.) As enacted in 1872, Civil Code section 1969 stated: "An employer must indemnify his employe [*sic*], except as prescribed in the next section, for all that he necessarily expends or loses [*sic*] in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employe [*sic*], at the time of obeying such directions, believed them to be unlawful." The following section specified that an employer was not bound to indemnify an employee for losses suffered in consequence of the ordinary risks of the business. The latter provision was not included when section 2802 was reenacted in the Labor Code. (*Earll v. McCoy* (1953) 116 Cal.App.2d 44, 45–46 [253 P.2d 86]; former Civil Code, §§ 1969, 1970.)

the number, compensation, tenure, and appointment of employees." In addition, the Legislature has provided in Government Code section 25300 that: "The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees."

■ Santa Clara County and Fresno County are charter counties, and the City of Fresno is a charter city. The California Constitution, article XI, section 5, subdivision (b) gives charter cities "plenary authority" to provide in their charters for the compensation, method of appointment, qualifications, tenure and removal from office of municipal employees. With respect to municipal affairs, city charters "shall supersede all laws inconsistent therewith." (Cal. Const., art. XI, § 5, subd. (a).)

■ Article XI, section 4, subdivision (f) of the California Constitution pertains to county charters and states that county charters shall provide for "[t]he fixing and regulation by governing bodies, by ordinance, of the . . . duties, qualifications, and compensation" of county employees. Subdivision (g) of the same provision specifies that a duly adopted county charter supersedes general laws adopted by the Legislature that concern counties.

■ Regarding these granted powers, our Supreme Court has explained: "The constitutional language is quite clear and quite specific: the *county*, not the state, not someone else, shall provide for the compensation of its employees. Although the language does not expressly limit the power of the Legislature, it does so by 'necessary implication.' " (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285 [132 Cal.Rptr.2d 713, 66 P.3d 718] (*County of Riverside*).)

Consistent with these grants of authority, the charters of Santa Clara County, Fresno County and the City of Fresno all establish that the governing bodies of those entities provide for the compensation of all public employees. The general law counties have also implemented negotiated uniform allowances.

The Legislature has also provided a comprehensive scheme of due process protections governing the collective bargaining process between all local governments and employee organizations in the Meyers-Milias-Brown Act (MMBA). (Gov. Code, § 3500 et seq.) Pursuant to the MMBA, each of the city and county defendants, including the general law counties, has entered into a memorandum of understanding (MOU) with the relevant city or county

employees that contains provisions regarding regular annual or quarterly allowances for uniforms. Fresno County provides a uniform allowance that it recently converted to an increase in base salary. Santa Clara County provided an annual uniform allowance for deputy sheriffs in 2000 of $850, and $425 for park rangers. Tuolumne County provides $550 per year. The City of Fresno provided for $790 per year in 2002, and Yolo County provided for $175 per quarter.

■ Once the governing body of a local government approves a MOU entered into under the terms of the MMBA, it "is indubitably binding" on the contracting parties.[6] (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 337–338 [124 Cal.Rptr. 513, 540 P.2d 609].)

Against this background of public entity authority in the area of conditions and terms of employment of public employees, and express negotiation of uniform allowances, plaintiffs have the difficult task of explaining how a section of the Labor Code concerning indemnification can trump the constitutional and statutory authority expressly given to, and exercised by the public entity defendants.

Plaintiffs first contend that paying for the cost of an employee's uniform under section 2802 is distinct from setting the wages of public employees, so there is no conflict between section 2802 and municipal wage-setting powers.[7]

Alternatively, plaintiffs argue that if there is a conflict between the uniform allowances in the MOU's and their purported right to indemnification for uniform expenses under section 2802, the right to indemnification is a statewide matter that preempts all local regulation. As a part of this alternative argument, they contend that section 2802 is an indispensable part of the statutory scheme that protects employees' rights to minimum wages. As we

---

[6] Plaintiffs argue that their complaints include class action allegations that implicated classes of employees who are not covered by collective bargaining laws, are not in bargaining units, and do not have uniform allowances, citing possible managerial, confidential and temporary employees, as well as seasonal firefighters. They argue that the trial court erred by rejecting all claims on the basis of existing collective bargaining agreements. Although the presence of uniform allowances in the MOU's was presented for judicial notice in the trial court, we do not agree that the court based its decision entirely on the presence of such agreements. The main focus of the trial court's comments regarding the Regents and the state defendants was their exemption from laws regarding employee compensation. As for the city and county defendants, the court's main concern was that the state Constitution vests the power to prescribe the terms and compensation for employees with the city and county defendants. The fact that some of the defendants were parties to MOU's with their employees only adds to the determination that matters of uniform expense are of local, rather than statewide concern.

[7] Plaintiffs contend that the bargained-for uniform allowances in the relevant MOU's are insufficient to cover the actual costs of maintaining, cleaning and replacing uniforms.

explain *post*, plaintiffs are reading too much into section 2802 and are giving too little weight to the constitutional and statutory powers allocated to cities and counties and the integrity of the bargaining process that culminated in the MOU's between these parties.

### Payment for Uniforms Is Compensation

Plaintiffs first argue that payment for uniform expenses under section 2802 is not compensation because unlike compensation, indemnification under section 2802 is not directly dependent on performing labor. The sole support offered for this proposition is a federal tax case holding that a per diem living allowance for employees at a remote site did not constitute wages, but was an ordinary and necessary business expense of the employer for purposes of requiring the employer to withhold income taxes. (*Stubbs, Overbeck & Associates v. United States* (5th Cir. 1971) 445 F.2d 1142, 1150 (*Stubbs*).) The *Stubbs* court noted that it was not deciding whether the payments were income, but only whether the employer had to withhold taxes.[8] *Stubbs*, which was interpreting federal tax law, provides no support for the claim that plaintiffs' interpretation of section 2802 does not implicate a public entity's power to set employee wages.

More on point are California authorities concerning private employers that have concluded that payment for employee uniforms is a component of employee compensation. In *Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084 [64 Cal.Rptr.2d 457], this court explained that the Division of Labor Standards Enforcement was authorized to collect unpaid wages in the form of the costs of required uniforms.[9] "The term 'wages' has been held to include money as well as other value given, including room, board and clothes. [Citation.] ' "[T]he term 'wages' should be deemed to include not only the periodic monetary

---

[8] "It is clear that any payment to an employee which is an economic gain to him must be included in his taxable income. But we are not concerned with what constitutes taxable income to the employee. The problem here is whether the employees' living allowance payments were wages and by reason thereof the withholding requirement was imposed on the employer. Whether or not payments are taxable to, or deductible by, the employee is immaterial with regard to whether they are subject to withholding by the employer. That is a matter between the employee and the government." (*Stubbs, supra,* 445 F.2d at p. 1149.)

[9] California Code of Regulations, title 8, section 11070, paragraph 9, subdivision (A) states, in relevant part: "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. . . ." Paragraph 9, subdivision (B) contains a similar provision for tools. Plaintiffs argue that these regulations of the Industrial Welfare Commission expressly recognize that section 2802 applies to uniforms, citing a specific wage order. But review of that order and others like it reveals that such orders expressly do not apply to: "any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district." (Cal. Code Regs., tit. 8, §§ 11070, subd. (1)(B), 11160, subd. (1)(B).)

earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Citations.]" ' " (*UI Video, supra,* at p. 1091, citing *Schumann v. California Cotton Credit Corp.* (1930) 105 Cal.App. 136, 140 [286 P. 1068] and *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 44 [100 Cal.Rptr. 791].)

In *United Air Lines, Inc. v. Industrial Welfare Com.* (1963) 211 Cal.App.2d 729 [28 Cal.Rptr. 238], (disapproved on another point in *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 728, fn. 15 [166 Cal.Rptr. 331, 613 P.2d 579]), the court noted that a regulation regarding payment for employee uniforms in effect concerned employee wages. "Although it is agreed that the regulation was not intended to be one concerning wages, actually it is. The real effect of the order is to increase the female employees' wages by the amount which in the absence of the regulation they would have to pay towards the cost of their uniforms." (*United Airlines, Inc., supra,* at p. 746.)

Also, in *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483 [66 Cal.Rptr.2d 304, 940 P.2d 891], the court analyzed a challenge to a county retirement board's computation of retirement allowances. The court concluded that the county's payment of an annual uniform maintenance allowance was compensation because it provided a benefit to the employee in that it substitutes for other attire that the employee would have to acquire absent the uniform allowance. (*Id.* at pp. 487, 495–497; see also *Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 943 [179 Cal.Rptr. 287] [uniform allowance included in computation of pension benefits].)

■ In light of the foregoing reasoning, we conclude that payment to employees for work uniforms is a part of the employees' compensation and should be considered like any other payment of wages, compensation or benefits. The impact of this determination is that it places plaintiffs' claim of entitlement to compensation for uniform expenses as indemnification under section 2802 in direct conflict with a public entity's power to provide for compensation of its employees and to bargain with employee representatives under the MMBA concerning payment for expenses relating to uniforms.

*Payment for Uniforms is Not a Statewide Concern*

Anticipating a finding of conflict, plaintiffs argue that even in the event of a conflict between a municipality's wage-setting powers and plaintiffs' interpretation of section 2802, the latter must prevail because wages are a matter of statewide concern. Plaintiffs argue generally that concerns regarding payment of minimum wages, prompt payment of full wages, health and safety protections and collective bargaining statutes are all matters of statewide concern that are implicated in the provisions of section 2802 requiring

indemnification. But plaintiffs' arguments are not supported by the pertinent authorities in the context of this case.

For example, plaintiffs contend that if uniform allowances are compensation, section 2802 is indispensable to the statutory scheme that protects an employee's right to a minimum wage and prompt payment of wages. They refer to section 1182, subdivision (b) concerning the minimum wage and cite *San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 789 [163 Cal.Rptr. 460, 608 P.2d 277] (*San Francisco Labor Council*), which held that the Regents are subject to legislation regulating matters of statewide concern not involving internal university affairs. We note that the cited case also held that prevailing wage requirements were not matters of statewide concern. In addition, the *San Francisco Labor Council* case, relying on *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1] (*Sonoma County*), stated: "In that case we held 'the determination of wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern.'" (*San Francisco Labor Council, supra*, 26 Cal.3d at p. 790.)

Plaintiffs rely on *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 572, fn. 3 [74 Cal.Rptr.2d 29] and *Bonn v. California State University, Chico* (1979) 88 Cal.App.3d 985, 992 [152 Cal.Rptr. 267] (*Bonn*) to argue that section 2802 is part of the Legislature's scheme that safeguards employees' rights to full remuneration for work. *Phillips* was a wrongful termination case brought against a private employer. (*Phillips, supra*, 63 Cal.App.4th at p. 566.) The court merely stated that, for purposes of a wrongful termination claim based on public policy, the payment of wages concerns a fundamental public policy. (*Phillips, supra*, at p. 572, fn. 3.) The case has nothing to do with public employers or payment for uniform expenses. We do not equate a finding that termination for exercising a statutory right violates public policy with a determination of statewide concern sufficient to preempt the express powers of public entities.

In *Bonn*, the court harmonized the university's power to control the timing of employee vacations with a specific statute that allowed employees to receive a lump sum payment for vacation upon retirement. (*Bonn, supra*, 88 Cal.App.3d at pp. 990–991.) The court expressly declined to hold that general principles concerning private employers applied to public employment, but stated that it only used private sector employment law cases as aids in the construction of the relevant statutes. (*Id.* at p. 991, fn. 5.)

These cases do not concern section 2802 or provide a rationale for tying the indemnity provisions of that statute to any statewide interest that overrides the clear authority of public employers to negotiate and set the compensation of public employees.[10]

■ Finally, plaintiffs' argument that the MMBA and the Public Safety Officers Procedural Bill of Rights Act (POBRA) are general laws that apply to government employers only works against them.[11] In *County of Riverside, supra,* 30 Cal.4th 278, our Supreme Court explained that statutes like POBRA are "limited to providing procedural safeguards" and therefore impinge only minimally on the authority of a government employer to set employee compensation. (*County of Riverside, supra,* at p. 288.) The court reiterated its statement in *Sonoma County, supra,* 23 Cal.3d at page 317, that the Constitution expressly gives charter cities authority over employee compensation and that the determination of wages paid to government employees is a matter of local concern. ". . . 'Thus there is no question that "salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws." [Citation.] Nevertheless, the process by which salaries are fixed is obviously a matter of statewide concern . . . .' " (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 781 [35 Cal.Rptr.2d 814, 884 P.2d 645].) The fact that the Legislature may impose minimum standards or procedural requirements on governmental employers does not support the elimination of an entire component of employee compensation from the control or bargaining duty of local government employers.

*Cases Concerning Lost Tools and Employee Safety Do Not Govern*

Plaintiffs argue that cases involving indemnity for employee litigation expenses, lost property and supplying of safety equipment support the claim that section 2802 requires full reimbursement for all costs related to uniforms. In support, they rely on *O'Hara v. Teamsters Union Local # 856* (9th Cir. 1998) 151 F.3d 1152, 1160–1161 (*O'Hara*) and *O'Brien v. L. E. Lumber Co.* (1919) 43 Cal.App. 703, 706–707 [185 P. 514] (*O'Brien*). They also cite

---

[10] Plaintiffs also cite the unpublished federal district court case of *Desimone et al. v. Allstate Insurance Company* (N.D.Cal. Sept. 14, 1999, No. C 96-03606 CW) 1999 WL 33226248 in support of the argument that section 2802 supports a claim for wrongful discharge in violation of public policy, and is therefore a matter of statewide concern. Plaintiffs in *Desimone,* employees of a private company, sought summary judgment on their claim that they were terminated for asserting a right under section 2802 for reimbursement for business expenses. The district court held that waiver of rights under section 2802 was prohibited. Subsequently, that court, in another unpublished opinion, determined that the plaintiffs were not employees, but independent contractors and not subject to section 2802. (*Desimone et al. v. Allstate Insurance Company* (N.D. Cal. Nov. 7, 2000, No. C 96-03606 CW) 2000 WL 1811385.) *Desimone* does not support plaintiffs' claim in this case.

[11] POBRA is set out in Government Code section 3300 et seq.

*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096 [93 Cal.Rptr.2d 425] (*Jacobus*); *Earll v. McCoy* (1953) 116 Cal.App.2d 44 [253 P.2d 86] (*Earll*), and *Machinists Automotive Trades Dist. Lodge v. Utility Trailers Sales Co.* (1983) 141 Cal.App.3d 80 [190 Cal.Rptr. 98] (*Machinists*).

None of the cases discussing section 2802 apply it to public employers and none of them concern payment for the normal costs of cleaning uniforms. The *O'Hara* case pertained to indemnification between private parties for attorney fees incurred in defending against a third party suit.[12] (*O'Hara, supra,* 151 F.3d at pp. 1159–1160.) That case concerned the usual application of section 2802, as an indemnification statute, not an attempt to require indemnification for an item that is properly characterized as a component of employee compensation. The *Jacobus* case also concerned indemnification of an employee for defending an action arising out of the scope of employment. (*Jacobus, supra,* 78 Cal.App.4th 1096.) The *O'Brien* case provides even less support, as that court found that the employee had no legal basis for his claim for reimbursement for the use of his automobile during his employment. (*O'Brien, supra,* 43 Cal.App. at pp. 706–707.)

*Earll, supra,* 116 Cal.App.2d 44, involved a claim for indemnification for loss of employees' tools in a fire at the employer's premises. The court held that the loss was not in direct consequence of employment and denied the request for indemnity. (*Id.* at p. 47.) *Machinists, supra,* 141 Cal.App.3d 80, which also concerned tools left on the employer's premises, disagreed with *Earll*. (*Machinists, supra,* 141 Cal.App.3d at p. 83.) That court determined that where the tools were too heavy to remove from the premises and were secured in a locked inner room on the premises, the employee was entitled to be reimbursed under section 2802 when the tools were stolen in a burglary. (*Machinists, supra,* 141 Cal.App.3d at p. 86.) Neither *Earll* nor *Machinists* applied section 2802 to require employers to pay for purchase and maintenance of the tools. To the contrary, both cases recognized that the employees customarily paid for the tools. (*Earll, supra,* 116 Cal.App.2d at p. 45; *Machinists, supra,* 141 Cal.App.3d at p. 82.)

---

[12] The county defendants note that indemnification for costs of civil actions against public employees is governed by the terms of the Tort Claims Act. The Tort Claims Act provides that a public entity shall defend an employee in the usual civil action arising from scope of employment and to pay any claim or judgment against the employee in favor of the third party plaintiff. (Gov. Code, §§ 825 et seq., 995.) "[T]he Tort Claims Act was enacted in order to provide a comprehensive codification of the law of governmental liability and immunity in California. [Citation.] . . . A principal purpose of the indemnification statutes is to assure 'the zealous execution of official duties by public employees.' [Citation.]" (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1001 [47 Cal.Rptr.2d 478, 906 P.2d 440].) This comprehensive legislation providing for employee indemnification by public entities is more specific than section 2802 and is clearly applicable to the traditional use of that statute. Thus, even in the traditional area of indemnity for litigation expenses, it is likely that section 2802 has no application to public entities.

Plaintiffs argued that section 2802 concerns a statewide interest because it pertains to matters of worker safety. They contend that *Oakland Police Officers Association v. City of Oakland* (1973) 30 Cal.App.3d 96 [106 Cal.Rptr. 134] (*Oakland Police Officers*) held that the Legislature could require public employers to provide safety-related equipment. They contend that because some of the plaintiff employees are public safety employees, their uniforms are as related to safety as the gloves or mittens discussed in *Bendix Forest Products Corp. v. Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465, 472 [158 Cal.Rptr. 882, 600 P.2d 1339] (*Bendix*).

The *Oakland Police Officers* case concerned a statute that required employers to furnish police with safety equipment, including service revolvers. (*Oakland Police Officers, supra,* 30 Cal.App.3d at p. 98.) The issue in that case was whether an appropriations statute limited the city's duty to supply the safety equipment. (*Id.* at p. 99.) *Bendix* concerned a private employer who was ordered to provide protective gloves for workers who were exposed to hazardous conditions that included cuts or burns on their hands while removing lumber from a drag chain. (*Bendix, supra,* 25 Cal.3d at p. 468 & fn. 4.) Both cases involved safety equipment, but neither *Bendix* nor *Oakland Police Officers* mentioned home rule or local governmental authority. Assuming that protecting workers from safety hazards on the job is a matter of statewide concern, no case holds that an ordinary work uniform implicates worker safety.

■ In these arguments, plaintiffs are straying far from the provisions of section 2802 which merely pertain to indemnification for "necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." It has been a basic indemnification statute since its enactment in the Civil Code in 1872. Civil Code section 2772 defines indemnity as: "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."

There is no reasonable definition of section 2802 that would transform it into a worker safety statute.

None of the cases relied on by plaintiffs support their attempt to apply the indemnification provisions of section 2802 to preempt the constitutional power of cities and counties to set the terms of employee compensation. They produced no authority construing section 2802 to nullify the provisions of the constitution or the MOU's entered into after the give and take of collective bargaining negotiations undertaken in compliance with the MMBA. The issue of public employee wages and terms of compensation are indisputably matters of local concern, as our Supreme Court has repeatedly stated. (*County*

*of Riverside, supra,* 30 Cal.4th at p. 289 [establishing salaries of local government employees is municipal affair]; *Sonoma County, supra,* 23 Cal.3d at pp. 317–319 [salaries of employees of charter and general law cities and counties are matters of local concern].) The trial court properly sustained the demurrers of the city and county defendants.

*The Regents Possess Constitutional Status As To University Affairs*

 The Regents as an entity has been characterized as a statewide administrative agency with constitutionally derived powers. (Cal. Const., art. IX, § 9, subd. (a).)[13] "Its employees are public employees. . . . Regents have rulemaking and policymaking power in regard to the University; their policies and procedures have the force and effect of statute." (*Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 165 [95 Cal.Rptr.2d 10], citation omitted (*Kim*).) "It is apparent that the Regents as a constitutionally created arm of the state have virtual autonomy in self-governance [citation]. 'The corporation known as the Board of Regents constitutes the highest administrative authority of the University of California. "The Regents have the general rule-making or policy-making power in regard to the University . . . and are . . . fully empowered with respect to the organization and government of the University. . . ." [Citations.] "[T]he power of the Regents to operate, control, and administer the University is virtually exclusive." [Citations.]' [Citation.] As a consequence, policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes [citation]." (*Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 135 [143 Cal.Rptr. 276].)

An example of the paramount authority of the Regents is that by virtue of its status, it is constitutionally exempt from the mandate of overtime wage regulation. (*Kim, supra,* 80 Cal.App.4th at p. 166.) The limitations on that authority are few and narrowly defined. "Paralleling the Regents' broad powers to organize and govern the university is the general immunity from legislative regulation enjoyed by the University and its Regents. While the University and Regents are intended to operate as independently of the state as possible, there are three areas in which they are subject to legislative regulation: appropriations regarding salaries; general police power regulations; and regulations governing matters of statewide concern not involving internal university affairs." (*Kim, supra,* 80 Cal.App.4th at p. 166.) In

---

[13] Article IX, section 9, subdivision (a) of the California Constitution provides in part that the Regents possess: "full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services."

discussing the Regents' exemption from paying prevailing wages, the court in *Kim* noted that a prevailing wage requirement is a local, rather than a statewide concern. (*Id.* at p. 167.)

Plaintiffs argue that *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 334 [127 Cal.Rptr. 525] (*Grier*), concerning section 2928, is an example of the application of a Labor Code provision to a local public agency. Plaintiffs contend that section 2928, which prohibits deduction from wages for more than the proportionate amount which would have been earned during an employee's actual period of absence from work, has a public purpose like section 2802, and is applicable to public entity employers. But *Grier* dealt with the impermissible withholding of wages actually earned by employees.[14] *Grier* merely concluded that public employees cannot waive a protective provision of the Labor Code regulating the manner in which wages may be reduced for tardiness. It concerns the manner of payment, not the determination of an item of compensation. Section 2802 is not a procedural regulation and it has no statewide purpose that applies in the context of this case.

■ Even if section 2802 had some application to reimbursement for ordinary costs related to employee uniforms, that interpretation would not bring it within the narrow group of three areas in which the Regents are subject to legislative regulation. Section 2802 is not an appropriations statute or a general police power regulation. As discussed *ante*, it does not relate to a matter of statewide concern in the context in which plaintiffs seek to have it applied. To the contrary, the determination of employee compensation and benefits is particularly a matter within the Regents' broad constitutional grant of authority to manage its own internal affairs. The trial court properly sustained the demurrer of the Regents.

*State Employees Have No Claim for Uniform Purchase or Replacement*

The express language of Government Code section 19850.1 provides: "State employees shall be responsible for the purchase of uniforms required as a condition of employment. The state shall provide for an annual uniform

---

[14] At oral argument counsel for plaintiffs noted that the court in *Grier* found section 2928 applied to a public agency and that section 2802 is located in the same division of the Labor Code. We recognize that fact, although section 2802 is in a different article of that division. We also realize that section 2804 invalidates any contract that waives the benefits of the Labor Code article that includes section 2802. But no contract in this case waives the right to reimbursement for expenses, and the mere fact that some parts of that provision of the Labor Code may express statewide interests does not validate plaintiffs' attempt to apply a general indemnification provision to an element of employee compensation, which is clearly committed to the authority of the public agency defendants.

allowance to state employees for the replacement of uniforms . . . ."[15] Plaintiffs concede this point, but argue that the statute only mentions purchase and replacement and that the cost of cleaning and maintaining uniforms is a distinct item of cost that should be reimbursed under section 2802. Plaintiffs argue that *O'Brien, supra,* 43 Cal.App. 703 provides "perhaps the clearest analogy with cleaning and maintenance costs." But as noted previously, the plaintiff who claimed a right to reimbursement for gasoline, oil and tires for his automobile in *O'Brien,* was found to have "no legal claim upon the defendant either for salary or for the use of his automobile." (*O'Brien, supra,* 43 Cal.App. at p. 706.) That court reversed a jury verdict in the plaintiff's favor. (*O'Brien, supra,* at p. 707.)

Plaintiffs argue that *Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d at page 727 rebuts the state's contention that state employees are responsible for uniform costs subject to the terms of their collective bargaining agreements. But the cited case only stated that federal and state legislation may establish minimum standards for employee health, safety and welfare. Plaintiffs' citation to *Terminal Assn. v. Trainmen* (1943) 318 U.S. 1 [87 L.Ed. 571, 63 S.Ct. 420], as rebutting the state defendants' arguments is also not relevant. The court in *Terminal Assn.* stated that state law could regulate minimum requirements for worker safety and protection. These cases had nothing to do with uniform costs, but concerned employee safety laws.

▪ We agree with the Attorney General that plaintiffs' arguments are completely answered by Government Code section 19850.1, which evidences a clear intent that state employees are responsible for uniform expenses subject to the provisions agreed upon in the course of collective bargaining. The trial court properly sustained the demurrer of the State of California.

▪ In summary, even if section 2802 applies to claims for the costs of work uniforms, counties and cities are not subject to that requirement by virtue of the constitutional powers granted to them to manage their own affairs and set the compensation of their own employees. Similarly, because of the unique constitutional status of the Regents, it is not subject to general laws relating to employee compensation. By statute, the state is not responsible for purchasing uniforms, and is required by a different statute to provide an allowance for uniform replacement. No authority indicates that any of these public entities are mandated by section 2802 to pay for work-related uniform costs.

---

[15] For purposes of Government Code section 19850.1: " 'State employees' means employees of the state and its agencies, but does not include employees of the University of California or the California State University." (Gov. Code, § 19850, subd. (e).)

## CONCLUSION

The trial court correctly sustained the demurrers of all defendants to the complaints in the coordinated actions. The judgments are affirmed.

Stein, J., and Swager, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 4, 2006, S139020.